MULLIN HOARD & BROWN, L.L.P.
Steven L. Hoard, SBN: 09736600
P.O. Box 31656
Amarillo, Texas 79120-1656
Telephone: (806) 372-5050
Facsimile: (806) 372-5086
shoard@mhba.com
*Counsel for Hines Farms, LLC and Hines Cattle Company, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC., McCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.,<br><br>Debtors.[1] | Chapter 7<br><br>CASE NO. 23-20084-rlj<br><br>Jointly Administered |
| RABO AGRIFINANCE LLC,<br><br>*Plaintiff,*<br>v.<br><br>ACEY LIVESTOCK, LLC, et al.<br><br>*Defendants.* | **ADV. PROC. NO. 23-02005-rlj**<br><br>**Honorable Robert L. Jones** |

**DEFENDANTS HINES FARMS, LLC AND HINES CATTLE COMPANY, LLC'S BRIEF IN SUPPORT OF THEIR RESPONSE TO PLAINTIFF RABO AGRIFINANCE LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE ROBERT L. JONES, U.S. Bankruptcy Judge:

Pursuant to Federal Rule of Civil Procedure 56, Local Rules 7.1 and 56.5, Federal Rule of Bankruptcy Procedure 7056 and Bankruptcy Local Rules 7007-2 and 7056-1, Defendants Hines Farms, LLC and Hines Cattle Company, LLC (collectively, the "Defendants") hereby file their

---

[1] The Debtors in these jointly administered cases are: (1) McClain Feed Yard, Inc. (Case No. 23-20084); (2) McClain Farms, Inc. (Case No. 23-20885); and (3) 7M Cattle Feeders, Inc. (Case No. 23-20886). All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

brief in opposition to the Motion for Partial Summary Judgment ("Motion") filed by Plaintiff, Rabo Agrifinance LLC ("RAF"), ECF 191.

## SUMMARY OF ARGUMENT

In its Motion, RAF goes to great lengths to explain why certain Dealer Trust Claims[2] filed by various creditors under 7 U.S.C. § 217b are invalid. But even if RAF is right that none of the Challenged Claims are valid—RAF's financial position would remain unchanged. This is so for two reasons.

*First*, there are approximately $2.6 million in "Dealer Trust Funds" under the Dealer Trust Statute—a fact that the USDA Report that RAF relies on so heavily confirmed, *see* RAF App. at 567. The Dealer Trust Fund—which is a trust for the benefit of cash sellers of cattle to the debtor entities, separate and distinct from the bankruptcy estate—will be exhausted by the claims against it. Whether there are $119 million or $2.9 million in valid claims against those funds makes no difference to RAF. Neither RAF nor the bankruptcy estate more generally will have any access to the Dealer Trust Funds.

*Second*, the determination of which of the individual claims against the Dealer Trust Funds are valid under the Dealer Trust Statute will have no effect on the size of the bankruptcy estate or the claims asserted against it. Whether there are ten or ten thousand valid claims against the Dealer Trust Funds, the unsecured claims against the *bankruptcy estate* will equal the total amount of unsecured claims, reduced by the total amount of Dealer Trust Funds. The adjudication of the merit of *individual* Dealer Trust Claims will only affect each claimant's pro rata share of the Dealer Trust Funds and will have *no effect* on the bankruptcy estate, the claims against the bankruptcy estate, or RAF.

---

[2] Capitalized terms used herein are to have the same meaning as those terms are used in the Motion, unless otherwise indicated.

Because RAF's economic position will not be affected by the adjudication of individual Dealer Trust Claims, RAF lacks a "concrete and particularized" injury. And the theoretical "injury" it asserts in its adversary complaint and its Motion is not redressable by this Court. Thus, RAF—a mere bystander to the adjudication of the Dealer Trust Claims—lacks Article III standing to bring its declaratory judgment action.

## ARGUMENTS AND AUTHORITIES

**I. RAF lacks standing to bring its declaratory judgment action.**

The Motion should be denied because RAF lacks Article III standing. The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992). RAF has failed to demonstrate two of those elements: (1) an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical"; and (2) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (quotations omitted). "When a party sues for declaratory relief, he must satisfy the prerequisites of the Declaratory Judgment Act and Article III's standing baseline. In particular, he must show a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Safety Specialty Ins. Co. v. Genesee Cty. Bd. of Commissioners*, 53 F.4th 1014, 1021 (6th Cir. 2024) (quotations omitted).

RAF has not suffered an injury because its financial interests—including the claims it has asserted in the underlying bankruptcy proceeding—are not affected in any way by the adjudication of the individual Dealer Trust Claims. And because RAF is not affected by the adjudication of the individual claims, any purported "injury" suffered by RAF is not redressable by the relief sought from this Court. Because RAF lacks standing, the Motion should be denied.

**A. The Dealer Trust Fund is not part of the bankruptcy estate and will be exhausted by the valid claims against it.**

There were approximately $122 million in Dealer Trust Claims filed against the debtor entities. RAF App. at 566. The USDA conducted an investigation of these claims and the surrounding facts and circumstances and determined that (1) there were $2.6 million in Dealer Trust Funds under 7 U.S.C. § 217b ("Dealer Trust Statute"); and (2) approximately $2.9 million of the asserted claims against the Dealer Trust Fund were valid under the Dealer Trust Statute. RAF App. at 567.

While Defendants disagree that their claims are invalid (as the report found), it is safe to say that the USDA Report creates questions of material fact sufficient to doom RAF's Motion.[3] Specifically, the report found that there were $2.6 million in funds appropriately held in trust under the Dealer Trust Statute[4] and that there are $2.9 million in valid claims[5] against that fund. RAF App. at 567. These are significant findings for at least two reasons.

*First,* Dealer Trust Funds under the Dealer Trust Statute are not property of the bankruptcy estate. *See Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); 7 U.S.C. § 217b(a)(1) ("All livestock purchased by a dealer in cash sales and all inventories of, or receivables or proceeds from, such livestock **shall be held by such dealer in trust** for the benefit

---

[3] RAF, which placed great weight on the findings of the USDA Report in its Motion, *see* Mot. at 21-25, has admitted that the report is admissible and provides "persuasive evidence," *id.* at 21.
[4] *See* RAF App. at 572:
> As established by law, the proceeds from the sale of [McClain's cattle] inventory in Kentucky and Texas, and any cash monies received from livestock sales on hand or received after the invocation of the trust rights for livestock should be considered trust assets for unpaid livestock sellers as per law. The proceeds from the inventory liquidation were ordered to be held in trust, the trust assets reflecting this liquidation and cash on hand resulted in a total of $2,645,850.14.

[5] *See* RAF App. at 571 ("The total of valid claims with livestock sold on a cash basis that were unpaid either through receipt of dishonored check instruments from McClain or as a result of failure to pay for livestock totaled $2,930,940.33.").

of all unpaid cash sellers of such livestock until full payment has been received by such unpaid cash sellers." (emphasis added)).  As such, the Dealer Trust Funds are beyond the reach of RAF or any other creditor of the bankruptcy estate who is not also a beneficiary under the Dealer Trust.  *Second*, the USDA Report found that the Dealer Trust Fund will be exhausted by the valid claims against it—as there are at least $2.9 million in valid claims against the $2.6 million in Dealer Trust Funds, RAF App. at 567.  Thus, the Dealer Trust Fund will have nothing left over for the bankruptcy estate or for creditors like RAF.  RAF has not shown how it could have any entitlement to the Dealer Trust Fund—even if it were right that every Challenged Claim was invalid.

### B. The adjudication of individual claims against the Dealer Trust Fund will not affect the bankruptcy estate, claims against the estate, or RAF's claims.

The ultimate determination of which of the Challenged Claims are valid under the Dealer Trust Statute will have no bearing on the bankruptcy estate or on the value of RAF's claim against the bankruptcy estate.  The assets of the bankruptcy estate cannot include the Dealer Trust Funds—which in any case will be fully exhausted by the valid Dealer Trust Claims.  And the claims against the bankruptcy estate will not change as a result of any adjudication of which claims are valid.  In every case, the total claims against the estate will equal the total amount of claims against the debtor entities, less the total amount of Dealer Trust Funds.  The determination of which claims are valid and which claims are not will only affect each claimant's pro rata share of the trust assets because the claims against the Dealer Trust Fund greatly exceed the value of the Dealer Trust Fund itself.  But in total, the claims against the bankruptcy estate will be the same.

An example may be helpful to illustrate this point.  Take a hypothetical case where there are $100,000 in total unsecured claims against the bankruptcy estate and $1,500 in trust funds under the Dealer Trust Statute.  In one scenario, there are only $2,000 in valid claims under the Dealer Trust Statute (scenario 1).  But in another scenario (scenario 2), there are $60,000 in valid

claims. The pro rata payout to trust beneficiaries is drastically different under these two scenarios, but the effect on the bankruptcy estate is the same: in both cases, the same amount of unsecured claims remain after paying the valid claims from the dealer trust corpus. This is illustrated in the table below:

| Item | Scenario 1 | Scenario 2 |
|---|---|---|
| Total unsecured claims | 100,000 | 100,000 |
| Total dealer trust claims | 80,000 | 80,000 |
| Valid dealer trust claims | 2,000 | 60,000 |
| Dealer trust corpus | 1,500 | 1,500 |
| Pro rata share for valid claim (corpus / valid claims) | 75% | 3% |
| Payout to trust beneficiaries (pro rata share x valid claims) | 1,500 | 1,500 |
| Claims against the BK estate after paying Dealer Trust Claims | 98,500 | 98,500 |

It follows then, that RAF's purported injury is not redressable by the Court. Even if the Court were to grant RAF's requested declaratory relief, RAF would be in the same position. The Dealer Trust Funds would be paid only to beneficiaries with valid Dealer Trust Claims, and the same amount of unsecured claims would be asserted against the bankruptcy estate—meaning that RAF's recovery on its claims would be unaffected. Because RAF's purported "injury" is not redressable by the Court, RAF lacks standing. *Lujan*, 504 U.S. at 559-60.

## CONCLUSION

RAF is a mere bystander to the adjudication of the various creditors' claims to the Dealer Trust Funds under the Dealer Trust Statute. The outcome of these individual adjudications will not have any effect on RAF, because the size of the bankruptcy estate and the total claims against the estate will not be affected. Thus, RAF cannot show that it has suffered or will suffer a "concrete and particularized" injury or that any such injury is redressable by the declaratory relief it seeks. Because RAF lacks standing, the Court should deny its Motion.

DATED October 17, 2024.

        Respectfully Submitted,

        MULLIN HOARD & BROWN, L.L.P.
        P.O. Box 31656
        Amarillo, Texas 79120-1656
        Telephone: (806) 372-5050
        Facsimile: (806) 372-5086
        Email: shoard@mhba.com

        */s/ Steven L. Hoard*
        Steven L. Hoard, SBN: 09736600
        ***Counsel for Hines Farms, LLC and Hines Cattle Company, LLC***

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing Answer was served on all parties who have entered an appearance in this adversary proceeding via ECF on October 17, 2024.

                                               /s/*Steven L. Hoard*
                                               Steven L. Hoard