Van W. Northern
NORTHERN LEGAL, P.C.
3545 S. Georgia Street
Amarillo, Texas  79109
Telephone:  (806) 374-2266
Facsimile:  (806) 374-9535
northernlegalpc@gmail.com

and

Joseph H. Mattingly III (Admitted *Pro Hac Vice*)
JOSEPH H. MATTINGLY III, PLLC
P.O. Box 678 – 104 West Main Street
Lebanon, Kentucky  40033
Telephone:  (270) 692-1718
Facsimile:  (270) 692-1249
Email:  *joe@mattinglylawoffices.com*

*Attorneys for Defendants, Acey Livestock, LLC; Micahel Acey;
Barrett's Livestock, Inc.; and and Don Ralph Barrett*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| IN RE:<br><br>**McCLAIN FEED YARD, INC.,**<br>**McCLAIN FARMS, INC., and**<br>**7M CATTLE FEEDERS, INC.,**<br><br>Debtors. | Chapter 7<br><br>CASE NO.:  23-20084-rlj<br>Jointly Administered |
| **RABO AGRIFINANCE LLC,**<br><br>Plaintiff,<br><br>**vs.**<br><br>**ACEY LIVESTOCK, LLC,** *et al.***,**<br><br>Defendants | **ADV. PROC. NO:  23-02005-rlj**<br><br>**Honorable Robert L. Jones** |

**RESPONSE OF DEFENDANTS, ACEY LIVESTOCK, LLC; MICHAEL ACEY;
BARRETT'S LIVESTOCK, INC.; AND DON RALPH BARRETT,
IN SUPPORT OF MOTION BY PLAINTIFF, RABO AGRIFINANCE, LLC, FOR
PARTIAL SUMMARY JUDGMENT**

Come the Defendants, Acey Livestock, LLC, and Michael Acey (hereinafter "Acey"); and Barrett's Livestock, Inc., and Don Ralph Barrett (hereinafter "Barrett"), by counsel, and file this as their Response in support of the Motion by the Plaintiff, Rabo Agrifinance, LLC (hereinafter "RAF") for Partial Summary Judgment (Doc. #190).

Acey and Barrett will not burden the court with a recitation of the facts of the controversy involving application of the United States Department of Agriculture's ("USDA") "Dealer Statutory Trust" provisions, 7 U.S.C. §217b, to the various claimants thereunder, as RAF has adequately outlined those facts in its well-written Brief In Support of Motion For Partial Summary Judgment (Doc. #191).  As accurately pointed out in RAF's Brief, Acey and Barrett are two of only seven claimants whose submissions to the USDA under the Dealer Trust Statute have been deemed by the USDA as "Apparently Valid Claims."  Of the total "Apparently Valid Claims" in the aggregate amount of $2,930,940.33 (Doc. #192-4), Acey holds "Apparently Valid Claims" of $1,722,958.57 (Doc. #192-4) and Barrett holds an "Apparently Valid Claim" of $96,862.41. Two other holders of "Apparently Valid Claims," Brooks Farms and Starnes Cattle, holding aggregate claims totaling $204,121.94, failed to file responsive pleadings in this action and Default Judgments have been entered against them.  (Docs. # 175, 180, 188, 189).  Thus, of the total "Apparently Valid Claims" before the Court totaling $2,726,818.39, Acey and Barrett hold just over 2/3 thereof and Acey's claims alone account for over 63% of the total.  The USDA has determined that assets derived from the liquidation of livestock subject to Dealer's Trust Claims total $2,645,850.14 (Doc. #192-4).  Thus, with the elimination of two Dealer's Trust

2

claimants in this proceeding by default, the remaining claimants holding "Apparently Valid" Claims" could receive up to 97% of the value of each of their claims from Dealer Trust assets.

## ARGUMENT

**The USDA Investigation And Report Should Be Given Deference By This Court And Adopted So As To Reject All Dealer's Trust Claims Which Have Not Been Found By The USDA To Be "Apparently Valid."**

Upon the occurrences that led to the tragic death of Brian K. McClain, the subsequent liquidation of his livestock holdings and the filing of the multiple bankruptcy proceedings involving the McClain related entities, the USDA undertook to investigate claims filed with its agency under the Dealers Statutory Trust provisions, 7 U.S.C. §217b. In doing so, the USDA reviewed hundreds of pages of documents submitted by the claimants. It interviewed claimants and followed up with individual livestock haulers and stockyards. In short, the USDA performed an exhaustive evaluation of the McClain livestock operation and the merits of the numerous claims under the Dealer Statutory Trust provisions. At the conclusion of its investigation, the USDA issued a lengthy report describing its detailed work and findings it reached from that investigation. (Doc. #192-4, Appendix Pages 566-573).

Based on its investigation, the USDA determined that only seven claimants submitted claims under the Dealer Statutory Trust provisions which the agency deemed "Apparently Valid." Included in that small group were the claims of Acey and Barrett. Other than the seven claimants whose claims were found to be "Apparently Valid," all other claims were found to be "Apparently Invalid."

There is little question that Congress intended for the USDA to play a vital role in administering claims under the Dealer Statutory Trust provisions. All claims are required to be filed with the USDA in order to preserve the claims and the USDA is vested with enforcement

3

powers with respect to Dealer Statutory Trusts. 7 U.S.C. §217b(b), (f). Thus, it was a reasonable response to the duties delegated to the USDA that it undertook its detailed analysis of Dealer Statutory Trust claims related to the McClain operations.

In its Memorandum filed in support of its Motion for Partial Summary Judgment, RAF argues that the USDA's findings have "persuasive value." (Doc. #191, at p. 27). While true, in measuring appropriate deference to agency findings and statutory interpretations after *Loper Bright Enterprises v. Raimondo*, __ U.S. __, 144 S.Ct. 2244 (2024), it is important to affirm the degree of deference which this Court should accord the USDA's findings.

In *Loper Bright Enterprises*, the Supreme Court overruled long-standing precedent directing the manner in which courts deferred to the "permissible" agency interpretations of federal statutes those agencies administered. *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. at 2273. However, *Loper Bright Enterprises* struck down deference to agencies' **_interpretations of law_**, not their **_factual findings_**. In fact, Chief Justice Roberts spent a considerable part of his majority opinion making the distinction between the deference to be accorded an agency's factual findings and the lack of deference to which an agency's legal interpretation of statutes is entitled. In making that distinction, Chief Justice Roberts explained:

> During this period [referring to the New Deal era], the Court often treated agency determination of *fact* as binding on the courts, provided that there was "evidence to support the findings." *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 51, 56 S.Ct. 720, 80 L.Ed. 1033 (1936). "When the legislature itself acts within the broad field of legislative discretion, "the Court reasoned, "its determinations are conclusive." *Ibid.* Congress could therefore "appoint [] an agent to act within that sphere of legislative authority" and "endow the agent with power to make *findings of fact* which are conclusive, provided the requirements of due process which are specifically applicable to such an agency are met, as in according a fair hearing and acting upon evidence and not arbitrarily." *Ibid.* (emphasis added).
>
> But the Court did not extend similar deference to agency resolutions of questions of *law*. It instead made clear, repeatedly, that "[t]he interpretation of the meaning

4

of statutes, as applied to justiciable controversies," was "exclusively a judicial function." *United States v. American Trucking Assns., Inc.*, 310 U.S. 534, 544, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

*Loper Bright Enterprises v. Raimondo*, 144 S.Ct. at 2258 (emphasis original). Thereafter, Justice Roberts confirmed the continued validity of the rule that courts should defer to the factual findings of agencies, even as no deference is afforded agencies' interpretations of law, as follows:

> Perhaps most notably along those lines, in *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), the Court explained that the "interpretations and opinions" of the relevant agency, "made in pursuance of official duty" and "based upon … specialized experience," "constitute[d] a body of experience and informed judgment to which courts and litigants [could] properly resort for guidance," even on legal questions. *Id.*, at 139–140, 65 S.Ct. 161. "The weight of such a judgment in a particular case," the Court observed, would "depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.*, at 140, 65 S.Ct. 161.
>
> On occasion, to be sure, the Court applied deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency. For example, in *Gray v. Powell*, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301 (1941), the Court deferred to an administrative conclusion that a coal-burning railroad that had arrangements with several coal mines was not a coal "producer" under the Bituminous Coal Act of 1937. Congress had "specifically" granted the agency the authority to make that determination. *Id.*, at 411, 62 S.Ct. 326. The Court thus reasoned that "[w]here, as here, a determination has been left to an administrative body, this delegation will be respected and the administrative conclusion left untouched" so long as the agency's decision constituted "a sensible exercise of judgment." *Id.*, at 412–413, 62 S.Ct. 326. Similarly, in *NLRB v. Hearst Publications*, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), the Court deferred to the determination of the National Labor Relations Board that newsboys were "employee[s]" within the meaning of the National Labor Relations Act. The Act had, in the Court's judgment, "assigned primarily" to the Board the task of marking a "definitive limitation around the term 'employee.' " *Id.*, at 130, 64 S.Ct. 851. The Court accordingly viewed its own role as "limited" to assessing whether the Board's determination had a "'warrant in the record' and a reasonable basis in law." *Id.*, at 131, 64 S.Ct. 851.
>
> Such deferential review, though, was cabined to factbound determinations like those at issue in *Gray* and *Hearst*. Neither *Gray* nor *Hearst* purported to refashion the longstanding judicial approach to questions of law. In *Gray*, after deferring to the agency's determination that a particular entity was not a "producer" of coal, the

5

> Court went on to discern, based on its own reading of the text, whether another statutory term—"other disposal" of coal—encompassed a transaction lacking a transfer of title. See 314 U.S. at 416–417, 62 S.Ct. 326. The Court evidently perceived no basis for deference to the agency with respect to that pure legal question. And in *Hearst*, the Court proclaimed that "[u]ndoubtedly questions of statutory interpretation ... are for the courts to resolve, giving appropriate weight to the judgment of those whose special duty is to administer the questioned statute." 322 U.S. at 130–131, 64 S.Ct. 851. At least with respect to questions it regarded as involving "statutory interpretation," the Court thus did not disturb the traditional rule. It merely thought that a different approach should apply where application of a statutory term was sufficiently intertwined with the agency's factfinding.

*Loper Bright Enterprises v. Raimondo*, 144 S.Ct. at 2259-2260. Even Justice Jackson's dissent in *Loper Bright Enterprises v. Raimondo* notes that Chief Justice Roberts' majority opinion, "appears to distinguish between 'pure legal question[s]' and the so-called mixed questions in *Gray* and *Hearst*, involving the application of a legal standard to a set of fact." *Id.* at 2306.[1]

Particularly relevant here is the decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), cited as continuing authority in *Loper Bright Enterprises v. Raimondo*. There, consideration was given to what deference should be afforded a report by the Administrator designated under the Fair Labor Standards Act which issued findings related to whether particular on-call employees were entitled to recover overtime pay. Of concern in regard to the Administrator's report and findings was that it was, "not reached as a result of hearing adversary proceedings in which he finds facts from evidence and reaches conclusions of law from findings of fact." *Skidmore v. Swift & Co.*, 323 U.S. at 139. The Supreme Court noted that similar such reports from other agencies, like Treasury Decisions, had been given "decisive weight." Because the report and its conclusions in *Skidmore v. Swift & Co.* were, "made in pursuance of official duty, based upon more specialized experience and broader investigations and

---

[1] The *Skidmore* analysis has long been recognized and adhered to in the Fifth Circuit. *See, e.g., Belt v. Emcare, Inc.*, 444 F.3d 403, 408 n.12 (5th Cir. 2006).

information that is likely to come to a judge in a particular case," the Supreme Court adopted the findings of the Administrator and held that the employees were not entitled to overtime pay.

Similarly, in this case the report and conclusions of the USDA were rendered in accord with the agency's official duty and were based upon its specialized experience and broad investigation. The USDA's report and conclusions were thorough, analyzing every one of the numerous claims under the Dealer Statutory Trust provisions. The USDA's reasoning with respect to each claim was valid and consistent.

This Court should not divert valuable and limited judicial resources toward duplicating the investigation already thoroughly concluded by the USDA. Likewise, the claimants who already will suffer financial loss and hardship in this matter, even under the move favorable of circumstances, should not be forced to expend additional time, energy and financial resources to produce the same results already confirmed by the USDA.

WHEREFORE, the Defendants, Acey Livestock, LLC; Michael Acey; Barrett's Livestock, Inc.; and Don Ralph Barrett, respectfully request that this Court give controlling weight to the report and findings of the USDA in this matter and enter Partial Summary Judgment holding that all claims under the Dealer Statutory Trust provisions, other than those specifically identified as "Apparently Valid" claims, are not valid nor payable under the Dealer Statutory Trust and that they are not entitled to any funds that may be subject to the Dealer Trust Statute.

Respectfully Submitted,

*/s/ Joseph H. Mattingly III*
**JOSEPH H. MATTINGLY III**
Attorney at Law
104 W. Main Street - P.O. Box 678
Lebanon, Kentucky 40033
(270) 692 – 1718
*joe@mattinglylawoffices.com*
(Admitted *Pro Hac Vice*)

and

Van W. Northern
NORTHERN LEGAL, P.C.
3545 S. Georgia Street
Amarillo, Texas 79109
Telephone: (806) 374-2266
Facsimile: (806) 374-9535
*northernlegalpc@gmail.com*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed by the Clerk of the Court on this 17th day of October, 2024, by using the CM/ECF system which will serve a notice of electronic filing upon all interested parties registered. A copy thereof has also been served by electronic mail to the following:

| | |
|---|---|
| UNDERWOOD LAW FIRM, P.C. | Michael R. Johnson |
| Thomas C. Riney | Matthew M. Cannon |
| W. Heath Hendricks | RAY QUINNEY & NEBEKER P.C. |
| 500 South Taylor, Suite 1200, LB 233 | 36 South State Street, Suite 1400 |
| Amarillo, Texas 79101 | Salt Lake City, Utah 84111 |
| *tom.riney@uwlaw.com* | *mjohnson@rqn.com* |
| *heath.hendricks@uwlaw.com* | *mcannon@rqn.com* |

By: */s/ Joseph H. Mattingly III*
JOSEPH H. MATTINGLY

8