**John Massouh, SBN 24026866**
**John.massouh@sprouselaw.com**
**SPROUSE SHRADER SMITH PLLC**
**701 S. Taylor, Suite 500**
**P.O. Box 15008**
**Amarillo, Texas  79105-5008**
**(806) 468-3300; (806) 373-3454 FAX**

-and-

**The Leal Law Firm, LLC**
**Abel Leal**
**State Bar No. 24026989**
**abel@leal.law**
**14180 N. Dallas Parkway,Suite 300**
**Dallas, Texas 75254**
**Tel. (214) 395-5325;Fax. (806) 364-2526**

*ATTORNEYS FOR CATTLE OWNER DEFENDANTS*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| **IN RE:** | **Chapter 7** |
| **McCLAIN FEED YARD, INC., McCLAIN FARMS, INC., AND 7M CATTLE FEEDERS, INC.,** | **CASE NO. 23-20084-rlj** |
| | **Jointly Administered** |
| Debtors.[1] | |
| **RABO AGRIFINANCE LLC,** | |
| *Plaintiff,* | **ADV. PROC. NO.  23-02005-rlj** |
| **v.** | **Honorable Robert L. Jones** |
| **ACEY LIVESTOCK, LLC,** *et al.*, | |
| *Defendants.* | |

---

[1] The Debtors in these jointly administered cases are: (1) McClain Feed Yard, Inc. (Case No. 23-20084); (2) McClain Farms, Inc. (Case No. 23-20885); and (3) 7M Cattle Feeders, Inc. (Case No. 23-20886). All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

## CATTLE OWNER DEFENDANTS' RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT

Come now the Cattle Owner Defendants[2] (collectively, the "Cattle Owner Defendants"), by and through their undersigned counsel, and file this Response to Plaintiff Rabo AgriFinance LLC's ("Rabo") Motion for Partial Summary Judgment [Doc. 190] and state as follows:

### I.    INTRODUCTION

Rabo, an entity that failed to act in good faith with its dealings with Debtors, filed a motion for partial summary judgment seeking judgment relating to the validity of Cattle Owner Defendants' Dealer Trust claims asserted against the Debtors through the USDA. Rabo's motion must be denied for the following reasons:

1) **Lack of Standing**: Rabo lacks standing to contest the validity of the Dealer Trust claims held by Cattle Owner Defendants;

2) **Bad Faith and Knowledge of Fraud**: Rabo failed to act in good faith and knew, or should have known, about the Debtors' fraud, yet turned a blind eye and allowed the fraud to continue, thereby creating at least a fact issue that would preclude summary judgment;

3) **Validity of Dealer Trust Claims:** A fact issue exists regarding the validity of the Dealer Trust claims held by Cattle Owner Defendants because they owned cattle held, sold, or to be sold by Debtors, who acted as dealers under the Packers & Stockyards Act; and

4) **Non-Binding USDA Findings:** The USDA's findings are not conclusive and do not bind the parties or this Court.

Accordingly, Rabo's motion for partial summary judgment must be denied because Rabo lacks standing to contest the validity of the Dealer Trust claims and because there are numerous fact issues at play.

---

[2] The Cattle Owner Defendants consist of Dennis Buss, Bryan Blackman, Dora Blackman, Dr. Arnold Braun (Arnold Braun Trust), Robert Braun, Joel Brookshire, Gene Brookshire Family, LP, Eddie Bryant, Ed Buss, Michael Evans, Miranda Evans, Douglass Finley, Robert E. Gray, Ronnie Gray, Gray Brothers, Jimmy Greer, Gungoll Cattle Co., LLC, Leah Gungoll, AJ Jacques Living Trust, Dustin Johnson, Janice E. Lawhon, Morris Café, LLC, Lesh Family Trust, Jan Les, Gary Lesh, Jordan Lesh, LLC, Jared Lesh, Charles Lockwood, Cole Lockwood, Sherle Lockwood, Nikki Lockwood, Scarlet and Black Cattle, LLC, Jim Rininger, Steve Ryan, Steve T. Scott Farms, Inc., Scott Livestock Company, Inc, Robert Spring, Craig Sutton, Amy Sutton, Lyndal Van Buskirk, Janet Van Buskirk, Colby Van Buskirk, and Susan Van Buskirk.

## II.   SUMMARY JUDGMENT EVIDENCE

In addition to the documents on file with the Court, the Cattle Owner Defendants' Response

is based on the following evidence included or incorporated in their Appendix by reference as

if fully set forth therein, which is being filed simultaneously with their Response:

| Docket Entry No. 202 | Evidence Submitted in Appendix to Thorlakson Diamon T Feeders, LLC's Response to Rabo AgriFinance LLC's Motion for Partial Summary Judgment; |
|---|---|
| Exhibit A | Cattle Owner Defendants Proof of Claims filed Against McClain Feed Yard Inc. |
| Exhibit B | Cattle Owner Defendants Proof of Claims filed Against McClain Farms Inc. |
| Exhibit C | Cattle Owner Defendants Proof of Claims filed Against 7M Cattle Feeders Inc. |
| Exhibit D | Emails Between Rabo Employees Re: Renewal Meeting dated June 9-21, 2021 (Rabo-McClain 019142-019144) |
| Exhibit E | Emails Between Rabo Employees Re: Intercreditor Agreement-AgTexas-Thorlakson Diamond T Feeders LP dated January 25, 2021 (Rabo-McClain 023329) |
| Exhibit F | Emails Between Rabo Employees Re: OD-McClain Feed Yard Inc. December 18, 2019 (Rabo-McClain 014333-014335) |

## III.   ARGUMENT

### A.  Rabo Lacks Standing

For efficiency purposes, the Cattle Owner Defendants incorporate as if fully set forth herein

Thorlakson Diamond T Feeders, LLC's Response to Rabo Agrifinance LLC's Motion for Partial

Summary Judgment [Doc. 201] ("Thorlakson's Response"), specifically Section I, Subparts a and

b, and Defendants Hines Farms, LLC and Hines Cattle Company LLC's Brief in Support of Their

Response to Plaintiff Rabo Agrifinance LLC's Motion for Partial Summary Judgment [Doc.196-

1], specifically Sections I, Subparts A. and B (the "Hines Response"). The Cattle Owner

Defendants also incorporate the evidence submitted in support of Thorlakson's Response, which, combined with the Thorlakson Response and the Hines Response, outline in detail Rabo's lack of standing to contest the validity of the Dealer Trust claims held by the Cattle Owner Defendants. Further, to the extent any portion of this argument relies on materials contained within the Appendix to Thorlakson's Response [Doc. 202], such materials are incorporated herein by reference.

**B. Fact Issues Exist on Whether Rabo Acted in Good Faith and Without Knowledge of the Debtors' Fraud**

For efficiency purposes, the Cattle Owner Defendants hereby incorporate the arguments and brief contained within Thorlakson's Response, specifically Section II, Subparts a and b, which outline in detail Rabo's lack of good faith and its clear notice and knowledge of Debtors' fraudulent conduct. Further, to the extent any portion of this argument relies on materials contained within the Appendix to Thorlakson's Response [Doc. 202], such materials are incorporated herein by reference.

In addition to the Appendix filed by Thorlakson, the Cattle Owner Defendants direct the Court's attention to further internal Rabo correspondence, where Rabo acknowledges its awareness that the Debtors' Hereford facility had a maximum capacity of only 3,800 cattle. Appx p. 1-3. Despite this knowledge, Rabo repeatedly disregarded the Debtors' reports indicating they held tens of thousands of cattle—far exceeding the Hereford facility's capacity. See Docket No. 201 at p. 10. Rabo thus turned a blind eye, neglecting to intervene and allowing the Debtors' clear and blatant fraud to continue unchecked.

Moreover, Rabo was aware that the Debtors had custom-feeding arrangements with third parties. Rabo explicitly stated that third-party-owned cattle were excluded from its borrowing base

calculations, noting that "[c]ustom fed cattle that are on McClain's property are NOT counted on

his borrowing base" and that the "AR created during the custom feeding process is not counted on

our borrowing base." *See* Appx. P. 4-7. However, despite this knowledge of customer-owned cattle

and the Debtors' custom-feeding operations, Rabo never took steps to verify the actual number of

cattle present at the Debtors' facilities.

### C. Fact Issues Exist on Whether the Cattle Owner Defendants' Dealer Trust Claims are Valid

#### 1. The Cattle Owner Defendants Purchased and Owned the Cattle

The Cattle Owner Defendants submitted timely and accurate Dealer Trust claims against

Debtors through the USDA claims process. Rabo, without any supporting evidence, asserts that

the Cattle Owner Defendants never owned cattle and never sold their cattle through Debtors.

However, the evidence submitted in the Appendix filed contemporaneously with this response

(and in Rabo's own Appendix) demonstrates that the Cattle Owner Defendants bought cattle from

Debtors, fed the cattle with Debtors, and then Debtors acted as dealers and sold Cattle Owner

Defendants' cattle to third party feedyards.[3]

The evidence shows payments to Debtors for the purchase of cattle, documents evidencing the

feeding of the cattle, and then the ultimate sale of the cattle. The fact that the sale of the cattle was

to occur later (in only a few instances) does not invalidate a Dealer Trust claim. At a minimum,

the evidence creates a fact issue regarding the ownership, sale, and timeliness of the submitted

claims, which are the three pillars Rabo contends warrant summary judgment.

---

[3] The Cattle Owner Defendants refer to the Court in their Appendix to their proofs of claim filed in the bankruptcy proceeding that contain, among other things, their transaction documents relevant to their Dealer Trust claim and ask the court to take notice of the filed proofs of claim.

From at least January 2021, Rabo was aware that third parties owned cattle housed at the Debtors' facilities, that the Debtors sold cattle to these third parties, and that they billed the third parties for the purchase price. Rabo further knew that when the cattle were ready to be sent to feedyards, the Debtors would sell the cattle on behalf of the owners and that neither the cattle nor the resulting collateral were part of Rabo's collateral base. *See* Appx. 1-3. Despite Rabo's acknowledgment that the Cattle Owner Defendants owned cattle, it now asserts that no such sale to the Cattle Owner Defendants occurred, nor did any subsequent sale of those cattle by the Debtors to third-party feedyards take place. Rabo's internal analysis, however, clearly indicates that it understood this process to be part of the Debtors' standard business operations when making loans to the Debtors. Rabo cannot now adopt a contrary position. Moreover, Rabo fails to clarify which cattle it claims were owned by the Debtors and which were owned by third parties, such as the Cattle Owner Defendants. For these reasons, Rabo's motion for partial summary judgment should be denied.

2.  The Cattle Feeding Agreements Do Not Establish a Partnership

The Cattle Feeding Agreement between a Cattle Owner Defendant and McClain Feedyard does not establish a partnership because it lacks several critical elements necessary to form a partnership under the relevant legal factors. Tex. Bus. Org. Code §152.052. Although the agreement grants McClain Feedyard a right to receive a share of profits from the sale of the fattened cattle, profit-sharing alone does not indicate a partnership if it serves as compensation for services rendered. Here, McClain Feedyard is being compensated for its role in feeding and maintaining the cattle, which aligns with the exception in Subsection (b)(1)(B), treating profit-sharing as a form of independent contractor compensation rather than evidence of partnership. *Id.* at §152.052(b)(1)(B).

6

Additionally, there is no expression of intent between a Cattle Owner Defendant and McClain Feedyard to act as partners in a joint business venture. The agreement does not give McClain Feedyard any right to participate in controlling or managing the Cattle Owner Defendant's cattle business, nor does it assign mutual responsibility for potential liabilities or third-party claims. *Id.* at §§152.052(a)(3), and 152.0252(a)(4). McClain Feedyard's obligations are limited to feeding and care expenses, and there is no indication of shared losses or liabilities—elements that typically reflect the mutual risk-taking characteristic of partnerships, which is absent in this agreement. *Id.*

Summarizing the analysis, the Cattle Feeding Agreement between a Cattle Owner Defendant and McClain Feedyard does not create a legal partnership. While McClain Feedyard contributes services (feed and care for the cattle), there is no indication that either party is contributing money or property to a jointly owned business entity. The cattle themselves are financed and owned solely by the Cattle Owner Defendant, not with joint or partnership funds, underscoring the lack of co-ownership in a business asset. In sum, the agreement functions as a service arrangement, with McClain Feedyard acting as an independent contractor entitled to profit-based compensation for its services, rather than as a partner with Cattle Owner Defendant in a shared business. This arrangement does not meet the criteria for partnership formation and, therefore, does not create a legal partnership between a Cattle Owner Defendant and McClain Feedyard. At a minimum, fact issues exist as whether a partnership was formed, precluding summary judgment.

3.   The Cattle Owner Defendants Own the Cattle and Are Not Property of an Alleged Partnership

The cattle referenced in the Cattle Feeding Agreements are not the property of any alleged partnership between McClain Feedyard and any of the Cattle Owner Defendants because they were acquired and financed solely by the Cattle Owner Defendant without any indication of partnership

7

ownership.[4] Under partnership property law, to be considered partnership property, it must be acquired in the name of the partnership or a partner's name with an explicit indication of partnership capacity or intent to hold the property as partnership property. Tex. Bus. Org. Code §152.102 (a).  Here, the Cattle Feeding Agreement specifies that the Cattle Owner Defendant purchased the cattle and paid McClain Feedyard directly for their acquisition, establishing that the purchase was made in the Cattle Owner Defendant's individual capacity.[5] Furthermore, the agreement does not indicate that the cattle were acquired with partnership funds, nor does it contain language suggesting that the Cattle Owner Defendant acted in his capacity as a partner in acquiring them. Tex. Bus. Org. Code §152.102 (a)(2)(A). Although McClain Feedyard is interested in the cattle's feeding, maintenance, and subsequent profit distribution, this arrangement does not convert the cattle ownership into partnership property. Instead, McClain Feedyard's role is limited to providing a service for a share of the profits, rather than acquiring any ownership interest in the cattle themselves. Consequently, the Cattle Owner Defendant retained individual ownership of the cattle, while McClain Feedyard is entitled only to the agreed profit-sharing terms, consistent with its role as a service provider rather than a co-owner.  Tex. Buz. Org. Code §105.102.

### D. The USDA's Findings are Not Conclusive and are Inconsistent With the treatment of Dealer Trust Claims in a Different Case

The USDA admits that its report is not binding. Instead, the report discusses "apparently valid" or "apparently invalid" claims, but nowhere in the report are its findings set forth as a final agency

---

[4] It is important to note that not all Cattle Owner Defendants entered Cattle Feeding Agreements with one or more of the Debtors.  Thus, Rabo's attempt to place all Cattle Owner Defendants in one category highlights why the Court should deny Rabo's motion for partial summary judgment – that is, there are a myriad of fact questions that cannot be determined by summary judgment.

[5] The Cattle Feeding Agreements expressly identify the Cattle Owner Defendant as the purchaser and owner of the cattle.  Specifically, the agreement provides, "the arrangement allows for [Cattle Owner Defendant] to purchase the calves" and identifies the amount that "[Cattle Owner Defendant] has paid to McClain Feedyard."

decision. They mere recommendations warranting further review and discovery. Because 7 U.S.C. § 217b contemplates a claimant's right to bring suit to preserve or enforce the dealer trust separate from the authority of the USDA to enforce the trust, the issue of the validity of a trust claim cannot be said to fall exclusively to agency discretion. *See* 7 U.S.C. § 217b(f)(outlining enforcement mechanisms). The USDA does not have the authority under the Act to adjudicate claims and its report is premature and should not serve as the basis of a summary judgment at this stage of the case.

Rabo's allegation regarding the date for sellers to perfect their claims is based on an incomplete record.  As noted above, Rabo knew that the Debtor was obliged by contract to sell customers' cattle and to convey the proceeds to the customer (as dealers usually do), but Rabo does not say when those sales occurred, which would trigger the notice requirement.  Moreover, there is no showing that any sellers agreed with the Debtor to enter into a credit sale, and in the absence of such an agreement, the Debtor's obligation to make payment may be extended until the date of sale.

The Dealer Trust claims in this case involve agreements for the purchase of cattle by Defendants from McClain, the feeding of the cattle by McClain, and then the future sale of the Defendants' cattle by McClain (acting as a dealer) to third parties. Integral to the sale of the cattle is the remittance of sales proceeds to Defendants in accordance with the agreements. Here, the USDA recommended that most of the Dealer Trust claims in this case are "apparently non-valid" claims.  The reasons why or how the USDA reached this conclusion are not clear, because such conclusions are not a final decision nor an agency action entitled to deference.

WHEREFORE, PREMISES CONSIDERED, the Cattle Owner Defendants respectfully pray that the Court deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas  79105-5008
(806) 468-3300; (806) 373-3454 FAX


*/s/ John Massouh*
John Massouh

and

The Leal Law Firm, LLC
Abel Leal
State Bar No. 24026989
abel@leal.law
14180 N. Dallas Parkway
Suite 300
Dallas, Texas 75254
Tel. (214) 395-5325
Fax. (806) 364-2526

*Attorneys For Cattle Owner Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2024, the foregoing document was served on all parties entitled to service via the Court's CM/ECF system.


*/s/ John Massouh*
John Massouh

2117566

10