UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 24055651
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

Michael R. Johnson (*Pro Hac Vice*)
Matthew M. Cannon (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email:  mjohnson@rqn.com
Email: mcannon@rqn.com

*Attorneys for Plaintiff Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS, AMARILLO DIVISION**

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC., McCLAIN FARMS, INC., and 7M CATTLE FEEDERS, INC.,<br><br>    Debtors.[1] | Chapter 7<br><br>CASE NO. 23-20084-rlj<br><br>Jointly Administered |
| RABO AGRIFINANCE LLC,<br><br>    *Plaintiff,*<br>v.<br><br>ACEY LIVESTOCK, LLC et al.,<br><br>    *Defendants.*[2] | **ADV. PROC. NO. 23-02005-rlj**<br><br>**Honorable Robert L. Jones** |

---

[1] The Debtors in these jointly administered cases are: (1) McClain Feed Yard, Inc. (Case No. 23-20084); (2) McClain Farms, Inc. (Case No. 23-20885); and (3) 7M Cattle Feeders, Inc. (Case No. 23-20886). All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

[2] The Defendants named in the Complaint are ACEY LIVESTOCK, LLC; MICHAEL ACEY; STAN E. AYERS, JR.; ARNOLD BRAUN TRUST; ARNOLD BRAUN; ROBERT BRAUN; BAR D RANCH LAND & CATTLE LLC; N.

1

### RABO'S REPLY TO RESPONSES FILED BY THE HINES PARTIES, JONES PARTIES, AND THORLAKSON IN CONNECTION WITH MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Rabo AgriFinance LLC ("**RAF**" or "**Rabo**"), through its counsel of record, hereby files its Reply brief to the three Responses (collectively, the "**Responses**") filed by Hines Farms, LLC and Hines Cattle Company, LLC (collectively, the "**Hines Parties**") [Dkt. 196-1], Curtis Jones Farms, Don Jones Farm, Inc., Don Jones Trucking, Inc. and Kinsey Jones (collectively, the "**Jones Parties**") [Dkt. 197-1], and Thorlakson Diamond T Feeders, LLC ("**Thorlakson**") [Dkt. 201]. The Hines Parties, Jones Parties, and Thorlakson shall collectively be referred to herein as the "**Subject Defendants**."[1]

---

[1] TERRY DICKS; BARRETT'S LIVESTOCK INC.; DON RALPH BARRETT; BELLA ELEGANCE LLC; BIG SEVEN CAPITAL PARTNERS, LLC; DORA BLACKMAN; BRYAN BLACKMAN; EDDIE BRYANT; BRENT BURNETT; JOE BURNETT; TERRY BURNETT; BUSS FAMILY TRUST; EDWIN D. BUSS; DENNIS BUSS; C HEART RANCH, LLC; COLETTE LESH; CARRAWAY CATTLE, LLC; RICHARD CARRAWAY; CURTIS JONES FARMS; DAC83 LLC; ERIC DeJARNATT; DON JONES FARM, INC.; DON JONES TRUCKING, INC.; DUFURRENA CUTTING HORSES; EDWARD LEWIS DUFURRENA; RIETA MAY DUFURRENA; ROBERT ELLIS; MICHAEL EVANS; DOUG FINLEY; GARWOOD CATTLE CO.; JUSTIN GARWOOD; GENE BROOKSHIRE FAMILY, LP; JOEL BROOKSHIRE; GRAY BROTHERS CATTLE; ROBERT GRAY; RONNIE GRAY; JIMMY GREER; GUNGOLL CATTLE, LLC; BRADLEY GUNGOLL; LEAH GUNGOLL; JACE HARROLD; HINES CATTLE COMPANY, LLC; HINES FARMS, LLC; A.J. JACQUES LIIVING TRUST; CORY JESKO; DWIGHT JESKO, JOANN & KEITH BROOKS d/b/a BROOKS FARMS; LARRY KEITH; DUSTIN JOHNSON; DAVID JOHNSON; KINSEY JONES; KINGDOM TRUST; JAMES MCCUAN; KEITH HARRIS; JANICE LAWHON; JAN LESH; MORRISON CAFÉ, LLC; LESH FAMILY TRUST; GARY LESH; JARED LESH; JORDAN LESH, LLC; LFC CATTLE; CHARLES LOCKWOOD; COLE LOCKWOOD; SHERLE LOCKWOOD; NIKKI LOCKWOOD; MAP ENTERPRISES; MIKE GOURLEY;NATALIE MARTUS; JEAN NIX; OPEN A ARENA LLC; BARRY PHILLIPS; DREW PHILLIPS; PRIEST CATTLE COMPANY LTD; PRIEST VICTORY INVESTMENT LLC; CHRISTOPHER PRINCE; PRODUCERS LIVESTOCK COMMISSION; SONNY BARTHOLD; DAVID RAINEY; RAPP RANCH; MARK J. REISZ; RALPH REISZ; RIDGEFIELD CAPITAL ASSET MANAGEMENT; JIM GIORDANO; RILEY LIVESTOCK, INC.; ANGIE ROBINSON; RICK RODGERS; STEVE RYAN; JIM RININGER; SCARLET & BLACK CATTLE, LLC; COLTON LONG; SCOTT LIVESTOCK COMPANY; SHAW & SHAW FARMS PARTNERSHIP LLC; THE UNIVERSITY OF FLORIDA; ROBERT J. SPRING; STARNES CATTLE; JEFF STARNES; EDDIE STEWART; ROBERT STEWART; RACHEL STEWART; SCOTT E. STEWART; STEVE T SCOTT FARMS, INC.; JUSTIN STUEVER; PHILLIP SULLIVAN; AMY SUTTON; CRAIG SUTTON; TGF RANCH LLC; TOM FRITH; THORLAKSON DIAMOND T FEEDERS, L.P.; JOHN TIDWELL; MYKEL TIDWELL; TINDAL TRUCK SALES; JOHN TINDAL; JANET VANBUSKIRK; LYNDAL VANBUSKIRK; SUSAN VAN BUSKIRK; COLBY VANBUSKIRK; CAMERON WEDDINGTON; NANCY WEDDINGTON; WILLIAM WEDDINGTON; WILDFOREST CATTLE COMPANY LLC; WILEY ROBY RUSSELL, JR. as TRUSTEE OF THE W. ROBBIE RUSSELL LIVING TRUST; WJ PERFORMANCE HORSES, INC.; JOB WHITE; and KENT RIES, in his capacity as CHAPTER 7 TRUSTEE OF THE DEBTORS' CONSOLIDATED BANKRUPTCY ESTATE.

**INTRODUCTION**

The Responses fail to substantively address the sole subject of RAF's Motion; namely, RAF's argument that the dealer trust claim documentation submitted by the Subject Defendants fails to demonstrate any valid trust claim—a conclusion already reached by the USDA. Defendants' silence on this issue is deafening. Their silence, however, is understandable given the contents of their specific dealer claim documents, including the absence of evidence demonstrating that actual cattle were purchased or sold and the inclusion of "McClain Farms Inc" checks that aside from the stamped signature of "Meagan Goad" were clearly filled out by certain Subject Defendants' themselves. In other words, not only were the Subject Defendants participants in the massive Ponzi scheme, but there are serious questions concerning the extent of their knowledge of the scheme. In any event, the Subject Defendants have provided no legal or factual opposition to the merits of RAF's Motion.

Instead of arguing the potential validity of their claims in these Responses, the Subject Defendants argue that RAF lacks standing to seek the Court's judgment on this specific issue. Subject Defendants particularly contend that RAF cannot show "injury" or that its injury could be redressed by the Court through favorable rulings. This argument fails as it ignores the undisputed factual and legal realities and purposes of this case. RAF initiated this action, in part, because it does not believe that all of the *Apparently Valid Claims* are, in fact, valid and payable under the Dealer Trust Act. It is undisputed that RAF has a properly perfected first-priority lien on the cattle and cattle proceeds of McClain Farms and McClain Feed Yard. Accordingly, should the Court conclude that the total amount of the valid Dealer Trust Claims is less than the amount of money currently constituting the trust res—which consists solely of cattle and the proceeds of cattle under

3

the Dealer Trust Act—then the valid Dealer Trust Claims would be paid from the trust res and the money remaining would be estate property payable to RAF on its secured claim. There is no question that RAF has a direct pecuniary interest in this case and stands to gain (or lose out on) substantial funds. RAF is a party in interest asserting justiciable claims, and the Responses provide no law or fact to undermine RAF's standing. RAF's Motion should be granted.

## ARGUMENT

I.  **RAF HAS STANDING TO SEEK THE REQUESTED RELIEF.**

At its foundation, "standing" is "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary (9th ed. 2009). The question of RAF's "standing" in this case arguably implicates the following: party in interest/bankruptcy law, Article III, Declaratory Judgment Act, and the Dealer Trust Statute. As outlined herein, RAF satisfies all possibly relevant standing requirements. But before specifically addressing those issues, it is necessary to address a few of the factual and legal realities that have been overlooked or misconstrued by the Subject Defendants in their Responses. These realities lay the foundation for understanding RAF's injury and the likelihood (if not certainty) that its injury would be redressed if it obtains favorable decisions by this Court.

A.  **RAF Has a Direct Pecuniary Interest in This Case and Stands to Gain (or Lose Out On) Substantial Funds.**

The Trustee currently holds $1,638,772.29 in the McClain Farms estate, which funds were admittedly generated from the sale of McClain Farms' cattle. (*See* Dkt. 82, Case 23-20085.) The Trustee also currently holds $835,560.05 in the McClain Feed Yard estate, which funds were admittedly generated from the sale of McClain Feed Yard's cattle. (*See* Dkt. 306, Case 23-20084.) And the Trustee also currently holds $91,507.10 in funds in the McClain Farms estate constituting

4

proceeds of the sale of heifers to Cactus Growers. These amounts total $2,565,839.44. It is undisputed that RAF holds a properly perfected first-priority lien on essentially all personal property assets of McClain Farms and McClain Feed Yard, including cattle and the proceeds of cattle. Accordingly, if it is determined by the Court that the total amount of the valid Dealer Trust Claims is less than the amount of money constituting the trust res—which consists solely of cattle and the proceeds of cattle under the Dealer Trust Act—then the valid Dealer Trust Claims would be paid from the trust res and the money remaining would be estate property payable to RAF on account of its perfected liens.

The USDA determined that twelve (12) Dealer Trust Claims, amounting to $2,930,940.33 in total, appeared to be valid under the Dealer Trust Statute (the "**Apparently Valid Claims**"):

| Name of Seller | Amount | Purported Livestock Purchase Date |
|---|---|---|
| Jeff Starns dba Starns Cattle | $30,006.43 | March 16, 2023 |
| Shaw & Shaw Farms Partnership LLC | $120,911.37 | March 16, 2023 |
| Bar D. Ranch Land & Cattle | $92,053.76 | March 21, 2023 |
| Don Ralph Barret and Barret's Livestock, Inc. | $96,862.41 | March 30, 2023 |
| Riley Livestock, Inc. | $431,020.97 | April 4, 2023 |
| Joanne and Keith Brooks, dba Brooks Farms | $141,260.26 | April 5, 2023 |
| Michael Acey and Acey Livestock LLC | $1,520,307.75 | April 7, 2023 |
| Riley Livestock, Inc. | $234,981.76 | April 10, 2023 |
| Michael Acey and Acey Livestock LLC | $100,272.05 | April 12, 2023 |
| Joanne and Keith Brooks, dba Brooks Farms | $32,855.25 | April 12, 2023 |
| Riley Livestock, Inc. | $28,056.55 | April 14, 2023 |
| Michael Acey and Acey Livestock LLC | $102,351.77 | April 17, 2023 |

However, Defendant Joanne and Keith Brooks, dba Brooks Farms, failed to respond to RAF's Complaint in this action, and the Court entered a Default Judgment against it holding, among other things, that the Dealer Trust Claims it filed "are not valid and are not payable under the Dealer Trust Statute." (Dkt. 188, pg. 4.) Consequently, the amount of Apparently Valid Claims in this case is now $2,726,818.39.

RAF initiated this action, in part, because it does not believe that all of the Apparently Valid Claims are, in fact, valid and payable under the Dealer Trust Act. (*See generally* Am. Compl. (Dkt. 3); Alt. Sch. Order (Dkt, 178).) For example, the documents comprising the three Dealer Trust Claims submitted by Riley Livestock raise substantial questions whether Riley Livestock was a broker that was purchasing cattle for the McClain Entities from third parties, and not a cash seller that might be covered by the Dealer Trust Act. Indeed, certain parties filing Dealer Trust Claims have asserted that the McClain Entities "would contract the cattle through Riley Brothers, and/or Riley Livestock, INC, Jeff Riley . . ." (*See* Dkt. 192-3, pg. 301; *see also id.* pg. 439 (showing Kentuckiana Livestock Market being the seller of numerous cattle who sold the cattle to the McClain Entities "via Riley Livestock Inc.").) Other Dealer Trust Claims identified Riley Livestock, along with the McClain Debtors, as the "purchasers" of cattle. (*See, e.g.,* Dkt. 192-2, pgs. 27-30.) The three Apparently Valid Claims of Riley Livestock total $694,059.25, meaning that a ruling of invalidity by this Court on these claims, alone, would likely result in "trust res" funds becoming estate property payable to RAF.

The fundamental flaw in Subject Defendants' standing argument is the incorrect assumption that there are at least $2.9 million in indisputably valid Dealer Trust claims that will be entitled to the $2.6 million in funds currently constituting the trust res. (*See generally*

Document    Page 7 of 17

Responses.) RAF obviously disputes that it is out of the money, and this Court *has not* made any rulings about what funds or property constitute trust assets as opposed to estate assets, or whether and to what extent or amount there are valid trust claims that should be paid from trust assets. RAF intends to challenge the validity of the Apparently Valid Claims pursuant to the "Second Phase" issues and timeline identified in the operative scheduling order. (*See* Alt. Sch. Order (Dkt, 178).)

The current Motion addresses approximately $60 million of the presumptively invalid Dealer Trust Claims and covers every claimant (with apparently invalid claims) who filed an Answer but who has not stipulated to dismissal. (*See generally* Motion.) The Motion comes on the heels of the Court's entry of numerous default judgments and other stipulated orders that have "eliminated" approximately $40 million of the Dealer Trust Claims that were deemed presumptively invalid by the USDA. In light of the unfortunate Ponzi scheme that was at play here, it is not surprising that dozens of claimants have either stipulated to "dismissal" of their Dealer Trust Claims or simply refused to participate in this case. The scheme also helps explain why the documentation submitted by Subject Defendants simply fails to demonstrate cash sales of actual cattle that would be covered by the Dealer Trust Act. (*See* Motion.) Addressing the Challenged Claims is the logical next step for the Court, Trustee, and parties to take to eventually identify and distribute estate property (and potentially trust res). And should the Court, consistent with the USDA Report, conclude that the Challenged Claims are invalid under the Dealer Trust Statute, the case will be significantly simplified and streamlined. In any event, this "background" of RAF's interests, stakes, and purpose in bringing this action provides the proper foundation and otherwise illuminates why RAF clearly has standing in this case.

### B. RAF is a Party in Interest Asserting a Justiciable Controversy and Otherwise Satisfies all Relevant Standing Requirements, Including Under Article III.

#### 1. RAF is a party in interest and the Court has core jurisdiction.

Under bankruptcy law, a court's arguably first consideration on the issue of standing is whether the party is a "party in interest." *See, e.g., In re Tarrer*, 273 B.R. 724, 730-31 (Bankr. N.D. Ga. 2001). "Party in interest" is not defined in the Bankruptcy Code but is generally defined as someone "who [has] a stake in the outcome of the bankruptcy case." *In re Rodrigues*, 370 B.R. 467, 475 (Bankr. D. Mass. 2007). The term "is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings." *Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.*), 71 F.3d 353, 356 (10th Cir. 1995) (cleaned up). Whether a party is a party in interest is determined on a case-by-case basis. *Peachtree Lane Assocs., Ltd. v. Granader (In re Peachtree Lane Assocs., Ltd.)*, 188 B.R. 815, 824 (N.D. Ill. 1995).

Addressing a "party in interest" in the context of § 1109(b), the Supreme Court recently stated that the "general theory behind §1109(b) is that anyone holding a direct financial stake in the outcome of the case should have an opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interests." *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 277-78 (2024) (cleaned up). The Court continued that "[t]his understanding aligns with this Court's observation that Congress uses the phrase 'party in interest' in bankruptcy provisions when it intends the provision to apply broadly." *Id.* at 278 (cleaned up).

As outlined above, RAF holds a direct financial stake in the outcome of this case. (*See supra* at Argument I.A.) A secured creditor with a lien on a debtor's assets has an interest and standing in bankruptcy cases to challenge whether certain property is trust property or property

8

belonging to the debtor and encumbered by the secured creditor's liens. Furthermore, there is no question that this Court has core jurisdiction to determine whether property is or is not property of the bankruptcy estate. *See In re Felice*, 480 B.R. 401, 410 (Bankr. D. Mass 2012) (holding that bankruptcy court has core jurisdiction to decide what constitutes estate property because "determining the extent of property of the estate is a proceeding that can only arise under the Bankruptcy Code"); *In re Touch America Holdings, Inc.*, 401 B.R. 107, 117 (Bankr. D. Del. 2009) ("Various courts have concluded that matters requiring a declaration of whether certain property comes within the definition of 'property of the estate' as set forth in Bankruptcy Code § 541 are core proceedings") (cleaned up); *All American Laundry Serv. v. Ascher (In re Ascher)*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991) (when a debtor and its creditors claim interests in property asserted to be part of the estate, the bankruptcy court has core jurisdiction to adjudicate all of those interests). Indeed, Section 157 expressly provides that a core proceeding includes "determinations of the validity, extent, or priority of liens." 28 U.S.C. § 157(b)(2)(K).

RAF is a party in interest and this Court is squarely situated to address the question of what constitute the property of the estate.

### 2. RAF satisfies Article III standing requirements in this "actual controversy."

The "party in interest" analysis also remains subject to the dictates of standing conferred by Article III of the Constitution. *In re Phillips*, 2012 WL 1232008 *2 (Bankr. D. N.J. April 12, 2012); *Tarrer*, 273 B.R. at 730–31. Under the broader doctrine of constitutional standing, "a party wishing to participate in a bankruptcy proceeding must: 1) have suffered an actual injury or show the imminence of such injury; 2) establish that the injury is fairly traceable to the conduct at issue; and 3) demonstrate that the requested relief is likely to redress the injury." *Id.* at 731. Specifically,

9

Article III standing requires that the party show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000).

Article III standing goes hand in hand with a request for declaratory judgment under the Declaratory Judgment Act. *See* 28 U.S.C. § 2201. When considering an action for declaratory judgment, a "court must ask (1) whether an actual controversy exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (cleaned up). The test for whether an "actual controversy" exists is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (cleaned up).

The Subject Defendants' Responses are generally limited to the argument that there is no actual controversy and that RAF cannot show injury or redressability. (*See generally* Responses.) These arguments fail. The Dealer Trust Claims and pending bankruptcy proceedings plainly show that there is a substantial controversy between RAF and the Subject Defendants concerning their respective and legally adverse interests in recovering funds from the Debtors. *See MedImmune, Inc.*, 549 U.S. at 127. This dispute is not only ripe, but any further delays in addressing the critical questions raised in this action will likely result in irreparable harm as assets that may be subject to

10

Debtors' estate are likely being dissipated by the minute. Furthermore, as outlined above, RAF has direct and concrete pecuniary interests and rights that are in imminent danger of being forever lost, but these interests and rights stand to be protected and even "enlarged" through favorable rulings by the Court in this case.

The Subject Defendants have cited no facts or legal authority that would undermine RAF's standing in this case. (*See generally* Responses.) Again, most of their arguments are based on the faulty assumption that RAF has no imminent injury or possibility to be redressed. (*See id.*) Thorlakson also cites *Highland Capital Management LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.*), 522 F.3d 575 (5th Cir. 2008) for the proposition that "the bankruptcy Trustee, not a creditor like Rabo, has standing to contest claims that are property of the estate." (Thorlakson Response at 4.) The *Highland Capital Management* case, however, is inapplicable in this case. That case was about whether certain state-law litigation claims belonged to the bankruptcy estate or to individual creditors, not about whether a secured creditor with a lien on estate property had standing to litigate and protect the nature, extent, and or validity of its lien rights. And significantly, the Fifth Circuit in that case *overruled* the bankruptcy court and held that the state-law claims belonged to the bondholder creditors, not the bankruptcy estate.

### 3. The Dealer Trust Act provides no bar to RAF's standing.

Thorlakson also points to the Dealer Trust Act as being some sort of bar to RAF's standing. Thorlakson appears to argue that because RAF is not one of the parties expressly identified in the Dealer Trust Act as having rights to "enforce" the statute, then it lacks standing to assert the claims it has asserted in this case. That cannot be true. RAF is not seeking to "enforce" the Dealer Trust Act in this action. Rather, it is asking this Court to make rulings about (a) whether certain property

11

is or is not part of the trust res created by the Dealer Trust Act, and (b) the amount of valid trust claims payable from the trust res. It is asking the Court to decide these issues because, as noted above, if it turns out that trust assets exceed the amount of valid trust claims, the remaining funds belong to the bankruptcy estate, secured by RAF's liens. As outlined above, a secured creditor with a lien on a debtor's assets has standing in bankruptcy cases to challenge whether certain property is trust property or property belonging to the debtor and encumbered by the secured creditor's liens. *See* 28 U.S.C. § 157(b)(2)(K); *In re Felice*, 480 B.R. at 410. In fact, in the case *In re Gotham Provision Co. Inc.*, the Fifth Circuit addressed an appeal from an adversary proceeding where a secured creditor (a bank) asserted claims against sellers of livestock asserting trust claims under the Packers Trust. 669 F.2d 1000 (5th Cir. 1982). The bank sought to establish the validity, priority, and extent of its lien on the funds that were presumably being held in trust under the Packers Act. *Id.* at 1004-1011. That is obviously very similar to what is happening here. It is irrelevant that RAF "is not an unpaid cash seller, is not the dealer, and does not stand in the shoes of the dealer," as Thorlakson asserts, because RAF has direct pecuniary interest in this case, and RAF has filed this action requesting rulings from the Court which will involve that pecuniary interest.[3]

## II. THORLAKSON'S ARGUMENTS ABOUT THE SAFE-HARBOR PROVISIONS OF THE DEALER TRUST ACT ARE IRRELEVANT TO THE MOTION.

Thorlakson also asks the Court to deny RAF's Motion because fact issues allegedly exist concerning RAF's ability to avoid otherwise valid Dealer Trust Claims under the safe-harbor

---

[3] Furthermore, RAF's Motion has been joined by certain defendants who have "presumptively valid claims," and also have a pecuniary interest in this matter. (*See* Acey Response, Dkt. 198.)

provisions of the Dealer Trust Act relating to cattle purchasers. (*See* Thorlakson Response at 6-12.) These arguments are irrelevant and should be summarily rejected.

RAF's Motion does not seek to avoid any of the Dealer Trust Claims addressed in the Motion under the Dealer Trust Act's safe-harbor provisions. (*See generally* Mot.) Rather, RAF's Motion asks the Court to conclude that the Challenged Claims are invalid under the Dealer Trust Statute, a conclusion that was already reached by the USDA with respect to these claims. (*See id.*) The safe-harbor provisions would only be relevant in a dispute between a purchaser (and RAF agrees with Thorlakson that a "purchaser" likely includes the holder of a security interest) and the holder of a valid Dealer Trust claim. Thorlakson and the rest of the Subject Defendants here are not the holders of valid Dealer Trust Claims, and RAF does not need to rely upon the Dealer Trust Act's safe-harbor provisions to prevail over those parties.

Again, it is telling that the Subject Defendants elected to oppose RAF's motion on the basis of an alleged lack of standing rather than challenge the actual merits of RAF's arguments. But instead of just conceding the invalidity of their claims, Subject Defendants likely recognize that delaying the Court's ruling on that issue allows the Subject Defendants to maintain at least some litigation leverage over both RAF and the Chapter 7 Trustee. As Thorlakson cryptically points, holders of perfected and valid Dealer Trust Claims might be able to assert disgorgement claims against parties who received funds that constituted trust funds under the Dealer Trust Act. (*See* Thorlakson Response at 6.) As long as the Court does not rule definitively that Thorlakson and the other Subject Defendants lack any valid and perfected Dealer Trust Claim, then their ability to dangle potential disgorgement claims over RAF's head will survive.

Furthermore, as long as the Court does not rule definitively that Thorlakson and the other Defendants to whom RAF's motion is directed do not hold valid and perfected Dealer Trust Claims, then their ability to defend against future Chapter 5 claims asserted by the Chapter 7 Trustee survives. The reason is because, as Thorlakson notes in his opposition, trust assets "are not property of the estate." (*Id.* at 4.) If trust assets are not property of the estate, then a bankruptcy trustee has no ability to seek avoidance of their transfer. *See, e.g., In re Fresh Approach, Inc.*, 51 B.R. 41, 422-232 (Bankr. N.D. Tex. 1985) (no viable preference claim related to proceeds transferred to produce supplier, because the funds transferred were impressed with a PACA trust to secure payment of the supplier, and the debtor did not have an interest in the funds that were transferred); *Stanziale v. Rite Way Meat Packers, Inc. (In re CFP Liquidating Estate)*, 405 B.R. 694, 697 (Bankr. D. Del. 2009) ("In the context of a bankruptcy, if a trust exists, 11 U.S.C. § 541(d) excludes those assets in the trust from a debtor's estate. . . Accordingly, if PASA trusts exist as to the Defendants, the Trustee's preference actions as to assets in those trusts must fail."); *In re Meyer's Bakeries, Inc.*, 402 B.R. 314, 319 (Bankr. W.D. Ark. 2009) ("Since PACA trust funds are not property of the estate, sellers of the product covered by PACA have a defense to a subsequent preference action by a trustee."). Regardless of any motivation for the Responses, the undisputed facts and controlling law dictates granting the Motion as to these Subject Defendants.

**III.   THE CLAIMS OF THE HINES PARTIES AND THE JONES PARTIES ARE INVALID UNDER THE DEALER TRUST ACT AS A MATTER OF LAW.**

Glaringly absent from the Hines Defendants' and the Jones Defendants' respective Responses is any substantive argument as to how or why their dealer trust claims are actually

14

"valid" under the Dealer Trust Statute.[4] These Subject Defendants do not dispute any fact that was presented in the Motion, and do not dispute the validity or contents of the documents in the Appendix comprising their specific Dealer Trust Claims. This failure is fatal to their opposition to the Motion. *See, e.g., Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (stating that when a movant meets initial burden, a nonmovant "must designate specific facts showing that there is a genuine issue for trial"). If they believed that the documents demonstrated a valid Dealer Trust Claim, or if they believed that there were other documents that would support their position, now was obviously the time to bring those before the Court. *See id.* As outlined in the Motion, the Challenged Claims fail to contain documents demonstrating that actual cattle were purchased or sold, such as transportation, sales receipts, markings, or correspondence supporting that issue. Instead, the Challenged Claims demonstrate the Subject Defendants' involvement in a Ponzi scheme. And that is definitely true with these Subject Defendants, as the documentation even demonstrates that these Subject Defendants filled out (and then even endorsed) checks to themselves "from McClain." (*See* App. 459-96; App. 497-508.) It is wholly unsurprising the USDA determined that these claims appeared to be invalid. (*See* USDA Report and Spreadsheet.) RAF is entitled to partial summary judgment against these Subject Defendants.

## **CONCLUSION**

The standing arguments made by the Subject Defendants are not well-taken and must be denied. Furthermore, RAF has presented undisputed facts demonstrating that the Challenged Claims are invalid, and because the Subject Defendants have not challenged the merits of the

---

[4] Thorlakson filed a "supplemental response" wherein he attempts to address the actual merits of the Motion by arguing that there are fact issues as to whether Thorlakson's claims are valid. (Dkt. 208.) RAF will address those arguments in its Reply addressing the other Responses that were filed on that same day.

arguments RAF has made, the Court should grant RAF's motion for partial summary judgment as to these Subject Defendants and issue a declaratory judgment that all of the Dealer Trust Claims that are the subject of RAF's Motion are invalid and not payable under the Dealer Trust Act, or from the funds held by the Chapter 7 Trustee that arguably constitute the res of a Dealer Trust.

DATED this 6th day of November 2024.

> UNDERWOOD LAW FIRM, P.C.
> Thomas C. Riney, SBN: 16935100
> W. Heath Hendricks, SBN: 24055651
> 500 South Taylor, Suite 1200, LB 233
> Amarillo, Texas 79101
> Telephone: (806) 376-5613
> Facsimile: (806) 379-0316
> Email: tom.riney@uwlaw.com
> Email: heath.hendricks@uwlaw.com
>
> Michael R. Johnson (*Pro Hac Vice*)
> Matthew M. Cannon (*Pro Hac Vice*)
> RAY QUINNEY & NEBEKER P.C.
> 36 South State Street, Suite 1400
> Salt Lake City, Utah 84111
> Telephone: (801) 532-1500
> Facsimile: (801) 532-7543
> Email: mjohnson@rqn.com
> Email:  mcannon@rqn.com
>
>
> */s/ Michael R. Johnson*
> Michael R. Johnson
> Matthew M. Cannon
>
> *Attorneys for Rabo AgriFinance LLC*

1689004

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2024, I electronically filed the foregoing **RABO'S REPLY TO RESPONSES FILED BY THE HINES PARTIES, JONES PARTIES, AND THORLAKSON IN CONNECTION WITH MOTION FOR PARTIAL SUMMARY JUDGMENT** with the United States Bankruptcy Court for the Northern District of Texas by using the CM/ECF system which sent notice to all registered ECF users in this case.

                                                                     */s/ Annette Sanchez*