UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 24055651
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

Michael R. Johnson (*Pro Hac Vice*)
Matthew M. Cannon (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email:  mjohnson@rqn.com
Email: mcannon@rqn.com

*Attorneys for Plaintiff Rabo AgriFinance LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS, AMARILLO DIVISION

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC., McCLAIN FARMS, INC., and 7M CATTLE FEEDERS, INC.,<br><br>     Debtors.[1] | Chapter 7<br><br>CASE NO. 23-20084-rlj<br><br>Jointly Administered |
| RABO AGRIFINANCE LLC,<br><br>     *Plaintiff,*<br><br>v.<br><br>ACEY LIVESTOCK, LLC et al.,<br><br>     *Defendants.*[2] | **ADV. PROC. NO. 23-02005-rlj**<br><br>**Honorable Robert L. Jones** |

---

[1] The Debtors in these jointly administered cases are: (1) McClain Feed Yard, Inc. (Case No. 23-20084); (2) McClain Farms, Inc. (Case No. 23-20885); and (3) 7M Cattle Feeders, Inc. (Case No. 23-20886). All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

[2] The Defendants named in the Complaint are ACEY LIVESTOCK, LLC; MICHAEL ACEY; STAN E. AYERS, JR.; ARNOLD BRAUN TRUST; ARNOLD BRAUN; ROBERT BRAUN; BAR D RANCH LAND & CATTLE LLC; N.

## <u>RABO'S REPLY TO RESPONSE FILED BY THE "CATTLE DEFENDANTS" AND THE SUPPLEMENTAL RESPONSE OF THORLAKSON IN CONNECTION WITH MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Plaintiff, Rabo AgriFinance LLC ("**RAF**" or "**Rabo**"), through its counsel of record, hereby files its Reply brief to the Response filed by the "**Cattle Defendants**" (the "**CD Response**") [Dkt. No. 205] and the Supplemental Response of "**Thorlakson**" (the "**Supp. Response**") [Dkt. No. 208].

---

TERRY DICKS; BARRETT'S LIVESTOCK INC.; DON RALPH BARRETT; BELLA ELEGANCE LLC; BIG SEVEN CAPITAL PARTNERS, LLC; DORA BLACKMAN; BRYAN BLACKMAN; EDDIE BRYANT; BRENT BURNETT; JOE BURNETT; TERRY BURNETT; BUSS FAMILY TRUST; EDWIN D. BUSS; DENNIS BUSS; C HEART RANCH, LLC; COLETTE LESH; CARRAWAY CATTLE, LLC; RICHARD CARRAWAY; CURTIS JONES FARMS; DAC83 LLC; ERIC DeJARNATT; DON JONES FARM, INC.; DON JONES TRUCKING, INC.; DUFURRENA CUTTING HORSES; EDWARD LEWIS DUFURRENA; RIETA MAY DUFURRENA; ROBERT ELLIS; MICHAEL EVANS; DOUG FINLEY; GARWOOD CATTLE CO.; JUSTIN GARWOOD; GENE BROOKSHIRE FAMILY, LP; JOEL BROOKSHIRE; GRAY BROTHERS CATTLE; ROBERT GRAY; RONNIE GRAY; JIMMY GREER; GUNGOLL CATTLE, LLC; BRADLEY GUNGOLL; LEAH GUNGOLL; JACE HARROLD; HINES CATTLE COMPANY, LLC; HINES FARMS, LLC; A.J. JACQUES LIIVING TRUST; CORY JESKO; DWIGHT JESKO, JOANN & KEITH BROOKS d/b/a BROOKS FARMS; LARRY KEITH; DUSTIN JOHNSON; DAVID JOHNSON; KINSEY JONES; KINGDOM TRUST; JAMES MCCUAN; KEITH HARRIS; JANICE LAWHON; JAN LESH; MORRISON CAFÉ, LLC; LESH FAMILY TRUST; GARY LESH; JARED LESH; JORDAN LESH, LLC; LFC CATTLE; CHARLES LOCKWOOD; COLE LOCKWOOD; SHERLE LOCKWOOD; NIKKI LOCKWOOD; MAP ENTERPRISES; MIKE GOURLEY;NATALIE MARTUS; JEAN NIX; OPEN A ARENA LLC; BARRY PHILLIPS; DREW PHILLIPS; PRIEST CATTLE COMPANY LTD; PRIEST VICTORY INVESTMENT LLC; CHRISTOPHER PRINCE; PRODUCERS LIVESTOCK COMMISSION; SONNY BARTHOLD; DAVID RAINEY; RAPP RANCH; MARK J. REISZ; RALPH REISZ; RIDGEFIELD CAPITAL ASSET MANAGEMENT; JIM GIORDANO; RILEY LIVESTOCK, INC.; ANGIE ROBINSON; RICK RODGERS; STEVE RYAN; JIM RININGER; SCARLET & BLACK CATTLE, LLC; COLTON LONG; SCOTT LIVESTOCK COMPANY; SHAW & SHAW FARMS PARTNERSHIP LLC; THE UNIVERSITY OF FLORIDA; ROBERT J. SPRING; STARNES CATTLE; JEFF STARNES; EDDIE STEWART; ROBERT STEWART; RACHEL STEWART; SCOTT E. STEWART; STEVE T SCOTT FARMS, INC.; JUSTIN STUEVER; PHILLIP SULLIVAN; AMY SUTTON; CRAIG SUTTON; TGF RANCH LLC; TOM FRITH; THORLAKSON DIAMOND T FEEDERS, L.P.; JOHN TIDWELL; MYKEL TIDWELL; TINDAL TRUCK SALES; JOHN TINDAL; JANET VANBUSKIRK; LYNDAL VANBUSKIRK; SUSAN VAN BUSKIRK; COLBY VANBUSKIRK; CAMERON WEDDINGTON; NANCY WEDDINGTON; WILLIAM WEDDINGTON; WILDFOREST CATTLE COMPANY LLC; WILEY ROBY RUSSELL, JR. as TRUSTEE OF THE W. ROBBIE RUSSELL LIVING TRUST; WJ PERFORMANCE HORSES, INC.; JOB WHITE; and KENT RIES, in his capacity as CHAPTER 7 TRUSTEE OF THE DEBTORS' CONSOLIDATED BANKRUPTCY ESTATE.

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................ 1

I.     DEFENDANTS HAVE NOT AND CANNOT ESCAPE SUMMARY
       JUDGMENT ON THE INVALIDITY OF THEIR TRUST CLAIMS ........... 1

       A.     RAF Satisfied Its Initial Burden Under Rule 56 .................................... 3

       B.     The Cattle Defendants Fail to Identify a Genuine Issue for
              Trial ......................................................................................................... 7

              1.     The Cattle Defendants fail to identify specific "facts" in
                     their Challenged Claims that would preclude summary
                     judgment ........................................................................................ 7

              2.     The Cattle Defendants fail to provide any "new" fact
                     that would preclude summary judgment .................................... 8

              3.     Cattle Defendants' "partnership" argument is
                     unpersuasive and irrelevant ......................................................... 9

II.    THE SAFE-HARBOR PROVISIONS AND RAF'S PURPORTED
       "KNOWLEDGE" OF THE FEEDING AGREEMENT
       ARRANGEMENT ARE IRRELEVANT TO THE MOTION ...................... 12

III.   RAF HAS STANDING ......................................................................... 14

CONCLUSION ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Cancer Soc. v. Cook*, 675 F.3d 524 (5th Cir. 2012) ................................................................ 13

*Big Easy Cajun Corp. v. Dallas Galleria*, 293 S.W.3d 345 (Tex. App.—Dallas 2009,
    pet. denied)........................................................................................................................ 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................ 2, 7, 8, 9

*Fairbanks v. Hardin*, 429 F.2d 264 (9th Cir. 1970)........................................................................ 6

*Freeman v. TDCJ*, 369 F.3d 854 (5th Cir. 2004)........................................................................ 2, 7

*In re Spiech Farms, LLC*, 592 B.R. 152 (Bankr. W.D. Mich. 2018)........................................... 1

*Ingram v. Deere*, 288 S.W.3d 886 (Tex. 2009) .......................................................................... 10

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011)........................................................................ 13

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). ........................................................ 2, 7

*Rice v. Wilcox*, 630 F.2d 586 (8th Cir. 1980) .............................................................................. 6

*Tubb v. Aspect, Int'l, Inc.*, 2017 Tex. App. LEXIS 362 (Tex. App.—Tyler 2017,
    pet. denied)........................................................................................................................ 12

*Vance v. Reed*, 495 F. Supp. 852 (M.D. Tenn. 1980) ................................................................ 6

**Statutes**

7 U.S.C. § 217b.................................................................................................................... 1, 9, 14

7 U.S.C. § 217b(e) ...................................................................................................................... 14

7 U.S.C. § 228b.................................................................................................................... 1, 9, 14

Tex. Bus. Orgs. Code § 152.052(a) ............................................................................................ 10

Tex. Bus. Orgs. Code § 152.052(a)(1)........................................................................................ 10

Tex. Bus. Orgs. Code § 152.052(a)(2)........................................................................................ 11

Tex. Bus. Orgs. Code § 152.052(a)(3)........................................................................................ 11

Tex. Bus. Orgs. Code § 152.052(a)(5)........................................................................................ 11

Tex. Bus. Orgs. Code § 152.052(c) ........................................................................... 12

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................. 2

Fed. R. Civ. P. 56(c) ................................................................................................. 2

**Regulations**

9 C.F.R. § 202.104 ............................................................................................ 5, 6, 9

9 C.F.R. § 202.116 .................................................................................................... 6

## **ARGUMENT**

The responding defendants continue to generally ignore the core question in RAF's Motion concerning the invalidity of the Challenged Claims. RAF's Motion presents the Court with the undisputed documents comprising the Challenged Claims and identifies the numerous fatal deficiencies in those documents rendering these claims invalid as a matter of law. The invalidity of the Challenged Claims is further supported by the results of the six-month investigation by the USDA. In their response, the Cattle Defendants make only conclusory and unsubstantiated assertions, and they fail to point to a single document in the Challenged Claims that would show there is a genuine issue for trial. The lack of any substantive evidence or argument concerning the purported validity of the claims is especially problematic here because all the Subject Defendants—who at trial would bear the burden of proof on their trust claims—must identify genuine disputed issues concerning all the required elements for a valid claim under the Dealer Trust Act. The Cattle Defendants, Thorlakson and the rest of the Subject Defendants have fallen woefully short of that burden in this case. Furthermore, the defendants' arguments concerning RAF's purported knowledge of the feeding arrangement and/or fraudulent scheme is unsupported and irrelevant to RAF's Motion. The Motion should be granted.

## I.    **DEFENDANTS HAVE NOT AND CANNOT ESCAPE SUMMARY JUDGMENT ON THE INVALIDITY OF THEIR TRUST CLAIMS.**

Under the Dealer Trust Statute, a claimant naturally has the burden to demonstrate that it is subject to and protected by the dealer trust provisions. *See* 7 U.S.C. §§ 217b & 228b; *see also In re Speich Farms, LLC*, 592 B.R. 152, 162 (Bankr. W.D. Mich. 2018) (stating that a claimant seeking to recover from a PACA trust must demonstrate by a preponderance of the evidence six requirements under PACA). Some of the requirements claimants must demonstrate here include

1

that: (1) the claimant sold specific actual cattle; (2) possession of the cattle was transferred to the buyer; (3) the cattle were purchased by a dealer; and (4) the claimant provided written notice to the dealer and filed such notice with the Secretary of Agriculture within (a) 30 days of the sale or (b) 15 business days "after the date on which the seller receives notice that the payment instrument promptly presented for payment has been dishonored." 7 U.S.C. §§ 217b & 228b. The failure to satisfy *any* of these requirements is fatal to the trust claim. *See id.*

Pursuant to Rule 56, summary judgment should be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying the materials in the record demonstrating the absence of a genuine issue of material fact. *Id.* at 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is met, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). On their own, "unsubstantiated assertions," "conclusory allegations," or "only a scintilla of evidence" cannot create a genuine issue of material fact. *Freeman v. TDCJ*, 369 F.3d 854, 860 (5th Cir. 2004). And although factual controversies are resolved in favor of the nonmoving party, that only happens "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Liquid Air Corp.*, 37 F.3d at 1075. Furthermore, the Supreme Court has made clear that summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any

material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-24.

### A.     RAF Satisfied Its Initial Burden Under Rule 56.

RAF's Motion seeks partial summary judgment on the sole question of the "invalidity" of the Challenged Claims. (*See* Mot.) In support of this relief, RAF presented the Court with copies of all of the documents that were submitted to the USDA in connection with the Challenged Claims. (*See* App. 1-565.) In other words, whatever the Defendants sent to the USDA to support their claims has been provided by RAF to the Court for its review. RAF then outlined for the Court the numerous reasons why these documents do not support a valid trust claim as a matter of law. (*See generally* Mot.) Some claim deficiencies are applicable to nearly all the Challenged Claims, such as documents demonstrating a livestock feeding/investment arrangement (Bill Tables and Projected Close Outs, and sometimes a Feeding Agreement), and the absence of documents addressing the transportation or delivery of specific cattle; the origin of the cattle (such as tag numbers or an invoice from a livestock sales facility); a history of selling cattle; or any witness statement about actual cattle being sold and delivered.[3] (App. 1-565.) Other deficiencies were more specific to the individual Challenged Claims, such as no sale date; a "future" sale date; a sale date of claimant's investment/payment to Debtor; and/or untimely claim submission.

With respect to the Cattle Defendants and Thorlakson, and as outlined in the Motion, Demonstrative Table, and Appendix, some of the more specific fatal deficiencies with these claims include the following:

---

[3] These types of documents were included with many of the "Presumptively Valid Claims" addressed in the USDA Report. (*See* App. 625-718.)

3

- "**Buss Parties**" – listed "sale" dates two to three months in the future. (App. 7, 22.)

- "**Gray Parties**" – submitted five Bill Tables (bills *to the* Gray Parties) dated January 10, 2023, which is the same date of the Gray Parties' alleged "sale" of cattle. (App. 46-52.) Alleged "sale" date also renders notice untimely (not within 30 days of "sale").

- "**Sutton**" – listed "sale" date three months in the future. (App. 57.)

- "**Lawhon**" – listed "sale" date three months in the future. (App. 79.)

- "**A.J. Jacques**" – alleged "sale" date of January 6, 2023, which date is the same as two Bill Tables *to* A.J. Jacques, and alleged "sale" price same as prices on Bill Tables. (App. 88, 99, 101, 108.) Alleged "sale" date renders notice untimely.

- "**Gungoll Parties**" – relies on Invoices *to the* Gungolls dated January 6, 2023, which is the same date of the Gungoll Parties' alleged "sale" of cattle. (App. 114-19, 123-25.) Alleged "sale" date renders notice untimely. Alleged "sale" prices are the same amount as the Invoices *to the* Gungolls for their alleged investments/payments to Debtors. (*Id.*)

- "**Lesh Parties**" – provides alleged "sale" dates of January 7, 2023, and March 15, 2023, but alleged "delivered" dates of April 13, 2023, and April 24, 2023, respectively. (App. 129.) (untimely) Jared Lesh expressly confirms via email to USDA that he is asserting a trust claim for "$6,236,608.23 of unpaid invoices" based on fifteen invoices *to Jared Lesh* (i.e., amounts *Jared Lesh* was to *pay Debtors*), with 12 of those invoices from 2022 (as early as February 2022) (untimely, among other problems). (App. 143-70, 172-73.)

- "**Brookshire Parties**" – alleges 17 different sales on April 14, 2023, (each sale between $200K and $456K) and two sales on April 10, 2023. (App. 177, 182.) Provides no supporting documentation other than Notices.

- "**Colton Long**" – identifies six "exp. sell date" for alleged cattle. (App. 194.)

- "**Scott Parties**" – alleges 12 different sales on April 25, 2023, totaling $4,806,566.53. (App. 230.) (Mr. McClain passed away on April 18, 2023.) Provides 11 invoices all dated April 25, 2023. (App. 232-64.)

- "**Spring**" – alleges "sale" date of July 7, 2022 (untimely) (App. 270.) (untimely).

- "**Evans**" – "sale" date of February 8, 2023 (untimely), which is the date of Evans' check *to* Debtors, with alleged claim amount being that same amount. (App. 286-88.)

- "**VanBuskirk Parties**" – numerous alleged "sale" dates more than thirty days prior to Notice (App. 330.) Check made out, filled out by, and endorsed by Janet VanBuskirk. (App. 306-07.) Check to Lyndal VanBuskirk dated April 5, 2023, for over $1 million. (App. 374.)

- "**Dustin Johnson**") – alleged "sale" date and Bill Table dated January 6, 2023 (untimely). (App. 407-09.)

- "**Jesko**" – no sale date provided and Bill Table dated January 1, 2023. (App. 429-31.)

- "**Thorlakson**" – readily admits (and to his credit) that he was "not certain about the disposition of these cattle at this time, but it is possible that [the McClain entities] or that Riley Livestock, Inc. purchased them." (App. 511.) Alleges nearly $10 million in trust claims. (App. 513.) On April 28, 2023, Mr. Joens from the USDA sent an email to Mr. Thorlakson requesting that he "[p]lease provide any additional supporting documentations, such as contracts, invoices, agreements, bills of sale, etc. to show proof of sale." And on May 17, 2023, Mr. Thorlakson responded: "I believe I have gathered everything together, if you have any questions feel free to reach out to me any time." (App. 564.)

The claim documents, themselves, contain numerous deficiencies that are fatal to the Challenged Claims as a matter of law. (*See generally* Mot.; App. 1-565.)

Given these clear and undisputed facts demonstrating the invalidity of the Challenged Claims under the Dealer Trust Statute, the Court need not even look to the USDA Report and Workbook. Nevertheless, the Court can and should at least consider the contents of the USDA Report, if only to find additional comfort in its conclusion concerning the invalidity of the Challenged Claims. (*See* USDA Report.) The Cattle Defendants are correct in stating that "the issue of the validity of a trust claim cannot be said to fall exclusively to agency discretion" and that courts have authority to address this issue. (CD Response at 9.)[4] However, the Cattle Defendants at least partially miss the mark when arguing that "[t]he reasons why or how the USDA reached this conclusion [of invalidity] are not clear, because such conclusions are not a final decision nor an agency action entitled to deference." (CD Response at 9.)

The USDA Report describes both "how" and "why" the USDA reached its conclusions, with the Report explaining that the USDA engaged in a six-month-long investigation into Debtors'

---

[4] RAF does not necessarily agree with the Cattle Defendants' argument that the "USDA does not have the authority under the Act to adjudicate claims." *See, e.g.,* 9 C.F.R. § 202.104.

business operations, records, and financials, and analyzed each and every trust claim that was submitted, often following up with the claimants to make sure they had provided all possible documentation. (USDA Report at 1-8; App. 172-73; 564.) Based on its six-month investigation and analysis, the "USDA investigators discerned that the [Challenged Claims] were not timely, and/or were part of livestock feeding arrangements comprising of both feeding contract and/or a fraudulent financial scheme as purported, all of which were not defined as dealer activity subject to the trust." (USDA Report at 4.) RAF agrees with Subject Defendants that the USDA Report is not a final decision, is not res judicata, and, arguably, is not even entitled to any deference.[5] Nevertheless, the USDA Report is admissible for all the reasons stated in the Motion, is relevant and material to this proceeding, and should be considered as part of the evidence in this case (similar to how the Judicial Officer would consider an investigative report in a reparation proceeding). *See* Mot.; *see also* 9 C.F.R. § 202.104.

RAF's Motion provides numerous arguments explaining how the undisputed contents of the Challenged Claims fail to support any possible claim under the Dealer Trust Statute. (*See generally* Mot.) These arguments are further supported by the results of the six-month investigation into the matter by the USDA. (*See* USDA Report.) Not only has RAF clearly met its initial burden under Rule 56 (thereby shifting the burden to the Subject Defendants), but the patent deficiencies in the Challenged Claims documents render any response on the merits futile.

---

[5] Courts addressing a review of a final reparation order entered by a Judicial Officer pursuant to the Packers and Stockyards Act (*see* 9 C.F.R. § 202.116) apply the "substantial evidence on the record standard" and do not substitute their judgment for that of the administrative officer. *See Rice v. Wilcox*, 630 F.2d 586 (8th Cir. 1980); *Fairbanks v. Hardin*, 429 F.2d 264 (9th Cir. 1970). On review of such final orders, the findings and orders are prima facie evidence but the decision and order is not res judicata. *See Vance v. Reed*, 495 F. Supp. 852 (M.D. Tenn. 1980).

**B.    The Cattle Defendants Fail to Identify a Genuine Issue for Trial.**

Because RAF's Motion supports a grant of summary judgment on its face, the Cattle Defendants must designate specific facts showing that there is a genuine issue for trial in order to avoid such judgment. *See, e.g., Liquid Air Corp.*, 37 F.3d at 1075. And because the Cattle Defendants bear the burden of proof on their trust claims at any trial, the Cattle Defendants must identify genuine disputed issues concerning all the required elements for a valid claim under the Dealer Trust Act. *Celotex Corp.*, 477 U.S. at 322. Any failure in this regard "necessarily renders all other facts immaterial." *Id.* at 322-24. The Cattle Defendants, along with the rest of the Subject Defendants, have fallen far short of meeting this burden. (*See generally* Responses.)

**1.    The Cattle Defendants fail to identify specific "facts" in their Challenged Claims that would preclude summary judgment.**

In their section addressing the actual merits of the purported validity of their trust claims, the Cattle Defendants fail to point to any specific trust claim or otherwise identify or address any specific document within their trust claims. (*See* CD Response.) Instead, they provide the conclusory and unsupported statements that they "submitted timely and accurate Dealer Trust claims against Debtors through the USDA claims process"; that the "evidence shows payments to Debtors for the purchase of cattle, documents evidence the feeding of the cattle, and then the ultimate sale of the cattle"; and, that "[a]t a minimum, the evidence creates a fact issue regarding the ownership, sale, and timeliness of the submitted claims, which are the three pillars Rabo contends warrant summary judgment." (CD Response at 5.) Such statements are the epitome of the "unsubstantiated assertions" and "conclusory allegations" that the Fifth Circuit confirmed cannot create a genuine issue of material fact. *Freeman,* 369 F.3d at 860. Furthermore, the Cattle Defendants fail to recognize that they are required to demonstrate genuine issues concerning all

the elements of a valid dealer trust claim, which they have clearly failed to do. *See Celotex Corp.*, 477 U.S. at 322.

> **2.     The Cattle Defendants fail to provide any "new" fact that would preclude summary judgment.**

The Cattle Defendants' responses are generally void of arguments addressing the specific documents contained in the Challenged Claims. As far as any new or additional evidence that could possibly create a genuine issue for trial, the Cattle Defendants refer, in a footnote, only and generally to their proofs of claim filed in the bankruptcy proceeding. (CD Response at 5 n. 3.) This new "evidence" only confirms that summary judgment is appropriate here. As an initial matter, the Cattle Defendants fail to identify any specific document in the proofs of claim that purportedly create a genuine issue of material fact. (*See generally* CD Response.) One possible reason for this reality is that there do not appear to be any relevant documents in the proofs of claim that were not already contained in RAF's Appendix and that were already addressed in RAF's briefing. *Compare* App. *with* CD App. Perhaps the only "relevant" portions of the proofs of claim are the admissions by Cattle Defendants that "Claimant and one or more Debtors entered into written and verbal cattle feeding agreements" and that "[i]n April 2023, Claimant became aware of Debtors' and Brian McClain's fraudulent acts which included disappearance of cattle or the inability of the Debtor or Brian McClain to account for many thousands of cattle and millions of dollars in cattle proceeds." (Claim 26-1 at 4.) The proofs of claim simply further support partial summary judgment.

In short, RAF is seeking partial summary judgment on one primary issue; that the Subject Defendants do not have valid dealer trust claims. (*See* Motion.) Using the Cattle Defendant's "pillar" reference, RAF's Motion has identified fatal deficiencies to numerous essential elements

of a valid trust claim under the statute—the "pillars" supporting a potentially valid claim. (*Id.*) Significantly, if even a single pillar is defective, the entire claim crumbles regardless of whether the other pillars are arguably supported. *See Celotex Corp.*, 477 U.S. at 322; 7 U.S.C. §§ 217b & 228b. The Subject Defendants have failed to point to any specific fact or assert any argument that even supports one of the necessary pillars, and have also failed to identify any possibly relevant facts that could be found through discovery that would justify delaying the Motion. (*See generally* CD Response.) As the purported "sellers" of cattle to the McClain Debtors, the Subject Defendants would have access to all of the documents that could possibly support a dealer trust claim. If such documents existed, the Subject Defendants were required to bring them to light. The fact that they have not done so simply means that there are no additional documents bearing upon the issue. Now is the time for Subject Defendants to identify why their claims are valid, either based on the undisputed documentation that was provided to the USDA or based on any new materials.[6] The Subject Defendants have failed in this regard and the Motion should be granted.

### 3.     Cattle Defendants' "partnership" argument is unpersuasive and irrelevant.

RAF's "partnership" arguments were based on the theoretical assumption that actual cattle were being purchased, fed, grown, and sold pursuant to the feeding arrangements outlined in the Challenged Claims. That theoretical assumption, of course, is not true. There are not $120 million in real cattle (or cattle proceeds) standing behind the $120 million in trust claims. Given the lack of evidence demonstrating actual cattle, and given the evidence and acknowledgment of the Ponzi

---

[6] In the context of reparation hearings, the rules provide that in response to the investigative report "[a]ny party may submit evidence in rebuttal of such information as is provided generally in these rules for the submission of evidence." 9 C.F.R. § 202.104(c). If the Subject Defendants truly believed that the USDA Report was wrong, it could have and should have submitted evidence supporting such a belief.

scheme, the partnership argument simply provides a "belt and suspenders" approach for granting summary judgment. If the Court wishes to include this reasoning in granting summary judgment, it can comfortably do so because the Cattle Defendants' arguments on the issue are without merit. (*See* CD Response at 6-7).

Under Texas law, the factors indicating the existence of a partnership include: (1) receipt or right to receive a share of profits of the business; (2) expression of an intent to be partners; (3) participation, or the right to participate, in the control of the business; (4) sharing or agreeing to share business losses or liability for third-party claims; and (5) contributing or agreeing to contribute money or property to the business. Tex. Bus. Orgs. Code § 152.052(a). Although these five factors are to be considered in determining whether a partnership has been formed, no single factor is either necessary or sufficient to prove the existence of a partnership. *See Ingram v. Deere*, 288 S.W.3d 886, 891, 896-98 (Tex. 2009). Generally, the two most important factors indicating the existence of a partnership are sharing profits and participating in the control of the business. *Big Easy Cajun Corp. v. Dallas Galleria*, 293 S.W.3d 345, 348-49 (Tex. App.—Dallas 2009, pet. denied).

In this case, four of the five factors indicating the existence of a partnership, including the two most important factors, are clearly present in the feeding agreements at issue. First, McClain Feedyard and the Cattle Defendants shared and agreed to share profits of the business. *See* Tex. Bus. Orgs. Code § 152.052(a)(1); *see also* Bill Table and Projected Close Out; Feeding Agreements. Indeed, the Feeding Agreement expressly provides that the projected "profit" from the partnership would be distributed 1/3 to McClain Feedyard and 2/3 to the Subject Defendant.

Nowhere does the Feeding Agreement suggest McClain Feedyard was being compensated as an independent contractor feeding and maintaining the cattle. (*See* Feeding Agreements.)

Second, McClain Feedyard and the Cattle Owner Defendants expressed their intent to be partners. *See* Tex. Bus. Orgs. Code § 152.052(a)(2). This was done through the Bill Table and Projected Close Outs, and was also done through the Feeding Agreements that expressly acknowledged that "[t]his agreement exists to identify the **partnership** of McClain Feedyard and the [Subject Defendant (AJ Jacques Trust in the example in the Motion)] . . . ." Third, as a partner to the Cattle Defendants, McClain Feedyard had the right to participate, and in fact participated, in control of the cattle feeding partnership. *See* Tex. Bus. Orgs. Code § 152.052(a)(3). Under the Feeding Agreement, McClain Feedyard purportedly controlled the following aspects of the cattle feeding partnership: feeding, processing, medicine, yardage, and trucking. These aspects controlled by McClain Feedyard constitute the major aspects of the cattle feeding business. In other words, McClain Feedyard controlled nearly all, if not all, of the major aspects of the partnership business.

Fourth, both McClain Feedyard and the Cattle Defendants contributed or agreed to contribute money or property to the business. *See* Tex. Bus. Orgs. Code § 152.052(a)(5). Under the investment feeding agreements, the Cattle Defendants contributed money to "purchase" the calves and McClain Feedyard contributed money and property to pay for, *inter alia*, feed, medicine, yardage, and trucking for the "calves." Contributing property, and thus value, to the venture can be in the form of money for equipment used in the partnership, even if the equipment is only in one partner's name, or in the form of invoices for work done for the company. Contribution can also be in the form of lending one's name to a venture when that person's name

11

is well-known in the nature of the business of the partnership. *Tubb v. Aspect, Int'l, Inc.*, 2017 Tex.

App. LEXIS 362, **26-27 (Tex. App.—Tyler 2017, pet. denied).[7]

Consequently, even if there were "cattle" purchased or sold pursuant to these agreements,

the partnership between Debtors and the Subject Defendants would provide yet another fatal

obstacle to the Challenged Claims.

## II. THE SAFE-HARBOR PROVISIONS AND RAF'S PURPORTED "KNOWLEDGE" OF THE FEEDING AGREEMENT ARRANGEMENT ARE IRRELEVANT TO THE MOTION.

Like Thorlakson, the Cattle Defendants attempt to argue that RAF's Motion should be

denied based upon alleged disputed issues of material fact regarding whether RAF acted in good

faith and without knowledge of the McClain Debtors' fraud. (*See* CD Response at 4-5.) Cattle

Defendants argue that RAF either knew or should have known that the McClain Debtors did not

have nearly the number of cattle that they were reporting to RAF, and this is a basis to deny the

Motion. (*Id.*) This argument is irrelevant and otherwise fails to defeat partial summary judgment

on the sole issue raised in the Motion.

As an initial matter, there is one aspect of the Cattle Defendants' argument that *strongly*

*supports* summary judgment on the invalidity of the Challenged Claims. Specifically, the Subject

Defendants now expressly acknowledge the existence of the Ponzi scheme whereby the McClain

Debtors solicited tens of millions of dollars—both from RAF in terms of loans and from third

parties such as Thorlakson and the Cattle Defendants in terms of investments—to "buy" and "sell"

---

[7] The only factor indicating the existence of a partnership which does not clearly exist in the feeding arrangement is sharing or agreeing to share business losses or liability for third-party claims. However, the statutory formulation of the factors indicating the existence of a partnership explicitly states that an agreement to share losses by the owners of a business is not necessary to create a partnership. Tex. Bus. Orgs. Code § 152.052(c).

what for the most part were non-existent, phantom cattle. A Ponzi scheme is a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments." *Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011) (quoting BLACK'S LAW DICTIONARY 1198 (8th ed. 2004)). "[T]hat investor funds were used to issue 'returns' to other investors" is a "*sine qua non*" of a Ponzi scheme. *Am. Cancer Soc. v. Cook*, 675 F.3d 524, 528 (5th Cir. 2012). All parties here appear to agree that the McClain Debtors were merely shuffling money around, using funds to repay investors their initial investments plus a return, and using either RAF loan funds or funds from other investors to make that happen.

By acknowledging and relying on the Ponzi scheme to argue the "safe-harbor" provisions of the Dealer Trust Act, the Subject Defendants are acknowledging the core reason why they were, and will forever be, unable to assert any valid dealer trust claim. The "cattle" at issue in the Challenged Claims simply did not exist. This explains why after a six-month investigation the USDA identified approximately $2.6 million in potential trust assets, approximately $2.9 million in presumptively valid claims, and approximately $119 million in presumptively invalid claims. (*See generally* USDA Report and Workbook.) These facts further explain why the Subject Defendants failed to provide the evidence necessary to satisfy the required elements for a valid dealer trust claim.

Cattle Defendants and Thorlakson attempt to argue that because RAF supposedly knew about the "feeding agreements" and was a potential active participant in the fraudulent scheme, RAF's Motion should be denied. (Response at 4-5.) The argument is without factual or legal merit. RAF is the biggest victim of this fraud and to suggest, without evidence, that RAF was complicit

13

in this mess is inappropriate, illogical, and obviously emphatically denied. But regardless of RAF's knowledge of the purported feeding agreement arrangement and/or fraudulent scheme, that is an issue that is irrelevant to the question concerning the validity of the Challenged Claims, if not to the entire case. Again, the safe harbor provisions, protecting purchasers of cattle who acquire cattle for value and in good faith, are irrelevant to the Motion. 7 U.S.C. § 217b(e). RAF's Motion does not seek any finding from the Court that because of the safe harbor rules, RAF's lien rights are superior to any valid trust claims. Furthermore, regardless of whether RAF knew about the "feeding agreement arrangements" entered into between Subject Defendants and Debtors, and regardless if there were actually some instances where actual cattle may have been acquired and/or sold pursuant to those arrangements, that has no bearing on the question of whether the undisputed documents submitted to the USDA in alleged support of their dealer trust claims satisfied all the requirements of the Dealer Trust Act. 7 U.S.C. §§ 217b & 228b. And as outlined herein and in the Motion, the invalidity of the claims is undisputed.

Should the Court determine that the Challenged Claims are invalid as a matter of law, the Court and the remaining parties (RAF, the Trustee and the holders of presumptively valid claims) can focus on determining the true nature and amount of any valid claims so those claims can be paid and the remaining estate funds can be distributed.

## III.    RAF HAS STANDING.

The Cattle Defendants join in the "standing" arguments contained in the other responses but add no new argument. RAF incorporates herein the standing arguments asserted in its prior brief.

## **CONCLUSION**

RAF has presented undisputed facts demonstrating that the Challenged Claims are invalid, and because the Subject Defendants have not challenged the merits of the arguments, the Court should grant RAF's motion for partial summary judgment as to these Subject Defendants and issue a declaratory judgment that all of the Dealer Trust Claims that are the subject of RAF's Motion are invalid and not payable under the Dealer Trust Act, or from the funds held by the Chapter 7 Trustee that arguably constitute the res of a Dealer Trust.

DATED this 12th day of November 2024.

> UNDERWOOD LAW FIRM, P.C.
> Thomas C. Riney, SBN: 16935100
> W. Heath Hendricks, SBN: 24055651
> 500 South Taylor, Suite 1200, LB 233
> Amarillo, Texas 79101
> Telephone: (806) 376-5613
> Facsimile: (806) 379-0316
> Email: tom.riney@uwlaw.com
> Email: heath.hendricks@uwlaw.com
>
> Michael R. Johnson (*Pro Hac Vice*)
> Matthew M. Cannon (*Pro Hac Vice*)
> RAY QUINNEY & NEBEKER P.C.
> 36 South State Street, Suite 1400
> Salt Lake City, Utah 84111
> Telephone: (801) 532-1500
> Facsimile: (801) 532-7543
> Email: mjohnson@rqn.com
> Email:  mcannon@rqn.com
>
>
> */s/ Michael R. Johnson*
> Michael R. Johnson
> Matthew M. Cannon
>
> *Attorneys for Rabo AgriFinance LLC*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of November 2024, I electronically filed the foregoing **REPLY TO RESPONSE FILED BY THE "CATTLE DEFENDANTS" AND THE SUPPLEMENTAL RESPONSE OF THORLAKSON IN CONNECTION WITH MOTION FOR PARTIAL SUMMARY JUDGMENT** with the United States Bankruptcy Court for the Northern District of Texas by using the CM/ECF system, which sent notice to all registered ECF users in this case.

<u>*/s/ Annette Sanchez*            </u>

1688279