Van W. Northern
NORTHERN LEGAL, P.C.
3545 S. Georgia Street
Amarillo, Texas  79109
Telephone:  (806) 374-2266
Facsimile:  (806) 374-9535
northernlegalpc@gmail.com

and

Joseph H. Mattingly III (Admitted *Pro Hac Vice*)
JOSEPH H. MATTINGLY III, PLLC
P.O. Box 678 – 104 West Main Street
Lebanon, Kentucky  40033
Telephone:  (270) 692-1718
Facsimile:  (270) 692-1249
Email:  *joe@mattinglylawoffices.com*

*Attorneys for Defendants, Acey Livestock, LLC; Michael Acey;
Barrett's Livestock, Inc.; and Don Ralph Barrett*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| **IN RE:** | |
| **McCLAIN FEED YARD, INC., McCLAIN FARMS, INC., and 7M CATTLE FEEDERS, INC.,** | Chapter 7 |
| | CASE NO.:  23-20084-rlj |
| Debtors. | Jointly Administered |
| **RABO AGRIFINANCE LLC,** | **ADV. PROC. NO:  23-02005-rlj** |
| Plaintiff, | **Honorable Robert L. Jones** |
| vs. | |
| **ACEY LIVESTOCK, LLC,** *et al.***,** | |
| Defendants | |

i

**BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT ON FIRST PHASE ISSUES**

Come the Defendants, Acey Livestock, LLC, and Michael Acey (hereinafter "Acey"); and Barrett's Livestock, Inc., and Don Ralph Barrett (hereinafter "Barrett"), by counsel, and pursuant to F.R.Civ.P. 56; F.R.Bankr.P. 7056; Local Rule 7.1 of the United States District Court for the Northern District of Texas and Local Rules 7007-1, 7007-2, 7007-3 and 7056-1 of the United States Bankruptcy Court for the Northern District of Texas, file this as their Brief in Support of their Motion for Partial Summary Judgment as to the "First Phase Issues" described in this Court's Alternative Scheduling Order entered July 3, 2024 (DE #178).

## TABLE OF CONTENTS

SUMMARY ...................................................................................................................1

UNDISPUTED MATERIAL FACTS FOR PARTIAL SUMMARY JUDGMENT .......................2

ARGUMENT...................................................................................................................3

CONCLUSION ...............................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Coast-to-Coast Produce, LLC v. Lakesdie Produce USA, Inc.*,
    709 F.Supp.3d 413 (E.D.Mich. 2023) ..............................................................10

*Fillipps v. s. Bonaccurso & Sons, Inc.*, 466 F.Supp. 1008 (E.D.Pa. 1978) ...................... 7-9

*First Nat. Bank v. Fellows*, 244 U.S. 416, 37 S.Ct. 734, 61 L.Ed. 1233 (1917)..................6

*Frosty Morn Meats, Inc.*, 7 BR 988, 998 Appx.A (M.D.Tn. 1980) .......................... 6-7, 9

*Home Tel & Tel. Co. v. Los Angeles*, 21 U.S. 265, 29 S.Ct. 50, 53 L.Ed. 176 (1908).......................6

*In re Milton Poules, Inc.*, 94 B.R. 648 (Bankr.C.D.Ca. 1988) ..................................... 9-10

**Statutes and Constitutional Provisions**

United States Constitution, Article I, §8 ................................................................................6

7 U.S.C. §192(b) ....................................................................................................................8

7 U.S.C. §196 ............................................................................................................. 4, 7-8, 10

7 U.S.C. §197 ........................................................................................................................4

7 U.S.C. §217b ...................................................................................................................1, 3

7 U.S.C. §499e .......................................................................................................................4

11 U.S.C. §541 ................................................................................................................. 9-10

7 U.S.C. §545 ........................................................................................................................9

Agricultural Improvement Act of 2018, §1103. Public Law 115-334 (Dec. 20, 2018)… ...............4

Ky. Rev. Stat. Ann. §355.9-109(3)(a) ....................................................................................9

Pa. Stat. Ann., tit. 12A §9-104(a) ..........................................................................................8

Pa. Stat. Ann., tit. 12A §9-203(1) ..........................................................................................8

Tex. Bus. & Com. Code Ann. §9-109(c)(1) ..........................................................................9

**Rules**

F.R.Bankr.P. 7056 ................................................................................................................ii

F.R.Civ.P. 56 ........................................................................................................................ii

L.B.R. 7007 ..........................................................................................................................ii

L.B.R. 7056 ..........................................................................................................................ii

L.R. 7.1 .................................................................................................................................ii

**Other Authorities**

Federal Register, Vol. 88, No. 120, Friday, June 23, 2023 ................................................ 3-4

Report Pursuant to Section 12103 of the 2018 Farm Bill: Study
    to Determine the Feasibility of Establishing a Livestock
    Dealer Statutory Trust (*usa.gov*); accessed December 9, 2024 ........................................ 4-5

Uniform Commercial Code §9-104(a) ........................................................................................7

SUMMARY

This Adversary Proceeding was initiated by Rabo AgriFinance LLC ("RAF") to address the dispute between RAF, the Defendants and the Trustee concerning certain claims to livestock sales proceeds made by the Defendants to the United States Department of Agriculture ("USDA") pursuant to 7 U.S.C. §217b (the "Dealer Trust Statue"). Although the livestock sales proceeds are currently under the custody and control of the Trustee, Acey and Barrett contend that under the Dealer Trust Statute, the livestock sales proceeds are imposed with a statutory trust for the benefit of Acey and Barrett, and those of the other Defendants who are "unpaid cash sellers of such livestock." Thus, Acey and Barrett argue that the proceeds are not assets of the bankruptcy estates of the respective debtors.

RAF contends that it holds a perfected security interest in all of the bankruptcy debtors' livestock and the proceeds therefrom which pre-dated the adoption of the Dealer Trust Statute. Thus, RAF contends that the livestock sales proceeds held by the Trustee are not subject to the Dealer Trust Statute, are not imposed with a statutory trust for the benefit of the Defendants, and should be paid to RAF pursuant to its perfected security interest.

On July 2, 2024, this Court entered an Alternative Scheduling Order (DE #178) in which it identified issues to be adjudicated in "phases." The "First Phase Issue" identified in the Alternative Scheduling Order was articulated as follows:

> The first phase shall address the applicability, if any, of the Dealer Trust Statute to the Estate Funds and to the Debtors' bankruptcy cases generally given the terms and date(s) of the Rabo Agrifinance LLC's ("RAF") loan documents and advancements and the applicability and validity, if any, of RAF's security interest in the Debtor's Estate Funds (the "First Phase Issues").

Acey and Barrett seek partial summary judgment on this issue. As a matter of law, sales proceeds subject to the Dealer Trust Statute are not assets of the bankruptcy estates of any of the

1

debtors and the security interest claimed by RAF does not attach to those sales proceeds. Thus, partial summary judgment should be granted against RAF on the First Phase Issues.

## UNDISPUTED MATERIAL FACTS FOR PARTIAL SUMMARY JUDGMENT

1. In May, 2018, RAF began a lending relationship with McClain Feed Yard, Inc., and its principal, Brian Keith McClain ("McClain").

2. Over the following several years, RAF expanded that lending relationship to include McClain Farms, Inc., and 7M Cattle Feeders, Inc.

3. To secure the various loans executed by RAF to McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., and prior to December 27, 2020, RAF obtained a security interest and lien against virtually all of the assets of McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., including cattle and cattle proceeds.

4. Effective December 27, 2020, Congress passed the Dealer Trust Statute.

5. RAF's loans and security interests in cattle and cattle proceeds predate the effective date of the Dealer Trust Statute.

6. In April, 2023, various parties, including Acey and Barrett, began filing claims with the USDA under the Dealer Trust Statute, contending that certain cattle sales proceeds were subject to the Dealer Trust Statute and imposed with a statutory trust for the benefit of unpaid cash sellers of livestock.

7. After a rigorous review and analysis of the claims filed under the Dealer Trust Statute, the USDA made the following determinations:[1]

---

[1] RAF has argued, with emphasis, that the USDA's determinations provide "persuasive value" to this Court's consideration of the issue in this litigation. (RAF Brief in Support of Partial Summary Judgment (DE #191), at p. 22).

2

A. That McClain and McClain Farms, Inc., were subject to the Packers and Stockyards Act as livestock dealers (7 U.S.C. §217b) in commerce, through the purchase of livestock and resale of livestock to feedyard and rodeo production customers during the period of March and April, 2023;

B. Only seven unpaid seller trust claims filed with the USDA, including the claims of Acey and Barrett, and a few others were "Apparently Valid Claims";

C. As of June 9, 2023, a total of $2,475,756.21 in trust assets was collected from the liquidation of livestock inventory in Kentucky and Texas on April 24, 2023, and April 25, 2023, at Blue Grass Stockyards, LLC, and Lone Star Stockyards, LLC. As of October 12, 2023, additional assets were disclosed from the sale of cattle inventory in May, 2023, totaling $91,507.10 and cash assets in July, 2023, totaling $80,010.70. Trust assets as of October 12, 2023, totaled $2,645,850.14.

**ARGUMENT**

Effective December 27, 2020, Congress amended the Packers and Stockyards Act, 1921, as previously amended (7 U.S.C. §217b) establishing a statutory trust for the benefit of unpaid cash sellers of livestock. The Department of Agriculture, Agricultural Marketing Service, explained the amendment as follows:

> Under the new trust provisions, livestock dealers whose average annual purchases of livestock exceed $100,000 must hold all inventories of, and receivables and proceeds from, livestock purchased in cash sales in trust for the benefit of all unpaid cash sellers of livestock until the cash sellers have been paid in full. Livestock sellers lose the benefit of the trust unless they notify livestock dealers and the Secretary in writing that payment has not been received. Such notice must be provided within

3

> 30 days of the final date when payment was due, or within 15 days of notice that a dealer's payment instrument has been dishonored.
>
> The newly added sec. 318 of the Act further provides that the dealer trust provisions apply only to cash sales in which the seller does not expressly extend credit to the buyer. Thus, livestock sellers have no claim against the trust if they have extended credit to the buyer.

Federal Register, Vol. 88, No. 120, Friday, June 23, 2023, at p. 41015. Prior to implementation of the trust, Congress instructed the USDA to conduct a study on the feasibility of a dealer trust.[2] The study was released on February 4, 2020, and included input from the industry and leaders that Congress later considered when amending the Act to establish the livestock dealer statutory trust.[3] The USDA's Report contained important commentary and background related to the proposed dealer statutory trust. Among that commentary, the USDA explained:[4]

> Several "statutory trusts" have been enacted in the agricultural sector. These include a livestock trust applicable to meat packers,[5] a poultry trust applicable to live poultry dealers,[6] and the PACA trust applicable to produce buyers.[7]
> . . . .
> Statutory trust laws work by providing that certain assets of a buyer are held in trust for the benefit of unpaid sellers. In practical application in the livestock industry, for example, the packer statutory trust for livestock allows the farmer to be paid in full for the livestock he has sold and delivered to the packers before the bank who has loaned the packer money recovers its investment.
> . . . .
> In cases in which the buyer is in bankruptcy, the buyer's inventory and proceeds are viewed as trust assets and are not included in the bankruptcy estate. Unpaid sellers have priority over even secured creditors as to those assets.

---

[2] Agricultural Improvement Act of 2018, §1103 (the "2018 Farm Bill"). Public Law 115-334 (Dec. 20, 2018).

[3] Report Pursuant to Section 12103 of the 2018 Farm Bill: Study to Determine the Feasibility of Establishing a Livestock Dealer Statutory Trust (*usa.gov*); accessed December 9, 2024.

[4] *Id.*, at pp13-15. Footnotes are original to Report but the numbering of those footnotes has been modified for consistency with the footnotes in this Brief.

[5] 7 U.S.C. 196. Applicable to meat packers that purchase more than $500,000 of livestock annually. The livestock statutory trust will be referenced as the "packer statutory trust" throughout this report.

[6] 7 U.S.C. 197. Applicable to live poultry dealers that obtain by purchase in cash sales or by poultry growing arrangement more than $100,000 of poultry annually.

[7] 7 U.S.C. 499e, known throughout the industry as the PACA trust.

4

The statutory trusts do not require buyers to designate a trust account. The trust is a non-segregated "floating trust" made up of all of a firm's commodity-related liquid assets, under which there may be a commingling of trust assets. Under this provision, there is no need to identify specific trust assets through each step of the accrual and disposal process. Since commingling is contemplated, all trust assets are subject to the claims of unpaid seller and agents to the extent of the amount owed them. As each supplier gives ownership, possession, or control of agricultural commodities to a buyer, and preserves their trust rights, that supplier will automatically become a participant in the trust. Trust participants remain trust beneficiaries until they have been paid in full.

The trust protects certain livestock seller and poultry growers and sellers by making their rights to specific assets of the packer or live poultry dealer legally superior to the interest of any secured lenders to whom the packer or live poultry dealer offered those assets as collateral for loans. Section 206 of the P&S Act authorizes a statutory trust for a packer, whereas Section 207 authorizes a statutory trust for a live poultry dealer.

Despite this background, RAF contends that its security interest in livestock and the proceeds from the sale of livestock entitles it to all of the Dealer Trust assets, for three reasons:

1. RAF's loans and contractual rights predate the Dealer Trust Statute, thus the Dealer Trust Statute is inapplicable to RAF's contractual rights and does not strip RAF of its first priority position;
2. The Dealer Trust Statute is not retroactive; and
3. Applying the Dealer Trust Statute to the Dealer Trust Assets and distributing those assets to Dealer Trust Claimants instead of RAF would result in an unconstitutional taking of RAF's collateral and contractual rights in violation of RAF's constitutional due process right.[8]

However, each of RAF's contentions is misplaced and should be rejected by this Court. Although, due to the relatively recent enactment of the Dealer Trust Statute, no jurisprudence has thus far been developed to interpret that specific amendment, judicial interpretation of substantially identical sister provisions of the Act are powerful and persuasive authority for the construction of the Dealer Trust Statute. In that regard, the very same arguments posed by RAF

---

[8] RAF Complaint (DE #1) at ¶¶ 181-183.

5

in this proceeding have been considered and universally rejected by other Courts considering the application of other dealer trust provisions of the Act.

The reasoning of the Bankruptcy Court for the Middle District of Tennessee, and adopted by the District Court for the Middle District of Tennessee on appeal in *In re: Frosty Morn Meats, Inc.*, 7 B.R. 988, 998 Appx.A (M.D.Tn. 1980), is sound and applies directly to this case. In *Frosty Morn Meats*, the bankruptcy court was called upon to interpret the PACA provisions of the Act as those provisions impacted the positions of secured creditors relative to PACA trust claimants. Like RAF here, the secured creditors in *Frosty Morn Meats* argued that the PACA trust provisions unconstitutionally impaired their existing contract rights by applying the PACA trust provisions retroactively to defeat their security interests. The bankruptcy court, and the district court on appeal, flatly rejected the claims of the secured creditors.

First, the *Frosty Morn Meats* Court pointed out the, "elementary constitutional law that all statutes are presumed to be constitutional, that the burden of establishing their constitutional infirmity is upon the party alleging same, that every inference is in favor of the validity of the duly enacted statue, and that a Court will indulge every rational and reasonable presumption in favor of the constitutional validity of a statute." *Frosty Morn Meats*, 7 B.R. at 1001 (citing *Home Tel. & Tel. Co. v. Los Angeles*, 21 U.S. 265, 29 S.Ct. 50, 53 L.Ed. 176 (1908); *First Nat. Bank v. Fellows*, 244 U.S. 416, 37 S.Ct. 734, 61 L.Ed. 1233 (1917)). Next, the *Frosty Morn Meats* Court explained that Congress' passage of the Act, and the subsequent amendments thereto including the PACA trust amendment, was entirely consistent with its powers under the Interstate Commerce Clause (Article I, §8, United States Constitution) to prevent burdens on and obstruction of interstate commerce. *Id.*, at 1003-1004.

6

Finally, the *Frosty Morn Meats* Court considered in detail the argument that the PACA trust provisions of the Act impaired existing state-law contractual rights. In rejecting that argument, the *Frosty Morn Meats* Court pointed out that the secured claims involved depended entirely on state law provisions of the Uniform Commercial Code. However, §9-104(a) of the UCC, as adopted by every state which could conceivably control the security interest involved in *Frosty Morn Meats*, provided:

> This Article does not apply . . . (a) to a security interest subject to any statute of the United States . . . to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property.

*Id*. at 1003. Recognizing that this provision of the UCC tacitly confirms the supremacy of federal legislation and its pre-emptive effect upon conflicting state law, the *Frosty Morn Meats* Court rightly held that, "On the basis of §9-104(a) and federal pre-emption, the enactment of 7 U.S.C. §196, to the extent of the trust imposed thereby for the benefit of cash sellers of livestock, prospectively rendered pre-existing floating liens upon Frosty Morn's after-acquired livestock, meat and meat products inventory, and resulting receivables and proceeds therefrom, are subordinate to the trust." *Id*.

An identical result under PACA was reached in *Fillipps v. S. Bonaccurso & Sons, Inc.*, 466 F.Supp. 1008 (E.D.Pa. 1978). There, an unpaid cattle seller sued a bank which seized livestock from a packer pursuant to the bank's perfected security interest in the packer's inventory, receivables and other proceeds. The unpaid cattle seller contended that the cattle seized by the bank were impressed with a statutory trust under PACA, for the benefit of unpaid cattle sellers favor which defeated the bank's perfected security interest. The bank countered that the PACA statutory trust was an unconstitutional imposition of a retroactive "secret lien." However, the federal district court in Pennsylvania rejected the bank's claim, explaining:

7

> [T]he Court finds no constitutional impediment to Congress' action in creating the statutory trust of 7 U.S.C. §196. In September, 1976, Congress amended the Act to create a trust for unpaid cash sellers of livestock. The Bank's security interest did not attach until its debtor, SPBI, acquired rights in the collateral, viz., in June, 1977, when plaintiff transferred livestock to SBI's possession. Pa.Stat.Ann. tit. 12A § 9-203(1). At the very same moment, the livestock and any proceeds therefrom became impressed with a superseding statutory trust for plaintiff's benefit arising under federal law.
>
> The Bank's security interest was limited at all times by Pa.Stat.Ann. tit. 12A § 9-104. The Packers and Stockyards Act, 7 U.S.C. §196, "governs the rights of parties to and third parties affected by transactions in particular types of property". Pennsylvania's commercial law impaired Continental Bank's rights to collateral (livestock inventory, receivables and other proceeds therefrom) which is excluded from Article 9 of Pennsylvania's version of the Uniform Commercial Code. Congress denied no process due and impaired no obligation of contract but merely used the exclusion of the Uniform Commercial Code's §9-104(a) to subject a particular type of property, livestock, bought and sold in interstate commerce to a statutory trust and thereby to a federal schedule of priorities among claimants.

*Id.* at 1012 n.2. Further, according to the district court, "As beneficiaries of the statutory trust, Congress intended all unpaid cash sellers to satisfy their claims from the defaulting packer's assets (inventoried livestock transferred by cash sellers to the packer and accounts receivable and other proceeds of the sale of such livestock) prior to satisfying any Article 9 perfected security interest in those assets." *Id.* at 1022. Finally, the district court reasoned, "If [the Bank] is permitted to have priority over [the cash seller's] claims, not only will [the packer] have been unjustly enriched by using [the unpaid cash seller's] purchase money instead of its own and then refusing to reimburse [the unpaid cash seller], but the Bank will have acquired an "unreasonable preference," 7 U.S.C. §192(b), if it is permitted to claim the assets of the statutory trust before full payment has been received by all unpaid cash sellers." *Id.* at 1023.

Significantly, whether the version of the UCC adopted in Texas or Kentucky controls RAF's security interest in this case, both the Texas and the Kentucky versions of the UCC contain a nearly identical provision recognizing the supremacy of federal legislation as did the UCC

8

provisions considered in *Frosty Morn Meats* and *Fillipps*. *See* Tex Bus. & Com. Code Ann. §9.109(c)(1); Ky. Rev. Stat. Ann. §355.9-109(3)(a).

Numerous other federal courts across the country have recognized the validity of statutory trusts created under the Act, the priority of trust assets over the security interests of creditors, and that statutory trust assets are not assets of a debtor's bankruptcy estate. In particular is the opinion of the United States Bankruptcy Court for the Central District of California in *In re Milton Poules, Inc.*, 94 B.R. 648 (Bankr.C.D.Ca. 1988). Arguments similar to those presented by secured creditors in *Frosty Morn Meats* and *Fillipps*, and by RAF here, were at issue in *Milton Poules*. There, the bankruptcy court held, with detailed analysis, that PACA's trust provisions are constitutional and that trust beneficiaries, like Acey and Barrett here, are entitled to enforce their rights in a bankruptcy proceeding. Finally, the *Milton Poulos* Court considered whether trust assets are even part of the bankruptcy estate. The Court noted that assets of statutory trusts, like PACA trusts, are specifically excluded from the bankruptcy estate, citing §541 of the Bankruptcy Code which provides that, "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, becomes property of the estate under subsection (a)(1) or (2) of this section *only to the extend of the debtor's legal title to such property*, but not to the extent of any equitable interest in such property that the debtor does not hold." *Id.* at 651 (emphasis original). Further, the Court noted that the legislative history of §541 indicates that these statutory trust assets are not part of the bankruptcy estate.

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed. This section and proposed 11 USC 545 also *will not affect* various statutory

9

> provisions that give a creditor of the debtor a lien that is valid *outside as well as inside the bankruptcy, or that creates a trust fund for the benefit of a creditor of the debtor.* See Packers and Stockyards Act § 206, 7 USC 196.

*Id.* at 651-652 (emphasis original).

Based on this analysis, the *Milton Poulos* Court ruled that, "Property held in trust by a bankruptcy debtor belongs to the beneficiary of the trust. Furthermore, case law interpreting § 541 of the Bankruptcy Code has consistently held that PACA trust assets are not part of the bankruptcy estate. Therefore, PACA trust assets are not part of the bankruptcy estate." *Id.* at 653. (internal citations omitted). *See e.g., Coast-to-Coast Produce, LLC v. Lakesdie Produce USA, Inc.*, 709 F.Supp.3d 413 (E.D.Mich. 2023).

Clearly, RAF's position is simply unavailing. Acey and Barrett are entitled to partial summary judgment, as a matter of law, determining that RAF's claimed security interest in livestock sales proceeds does not extend or attach to the cattle sales proceeds in the custody and control of the Trustee; that those sales proceeds are subject to the Dealer Trust Statute; and that the proceeds are not assets of the bankruptcy estate of any of the subject debtors.

## CONCLUSION

Based on all of the foregoing, the Defendants, Acey Livestock, LLC, and Michael Acey; and Barrett's Livestock, Inc., and Don Ralph Barrett, respectfully request partial summary judgment holding that, as a matter of law, the claimed security interest of the Plaintiff, Rabo AgriFinance LLC, in livestock sales proceeds does not extend or attach to the cattle sales proceeds in the custody and control of the Trustee; that those sales proceeds are subject to the Dealer Trust Statute; and that the proceeds are not assets of the bankruptcy estate of any of the subject debtors.

DATED this 18th day of December, 2024.

10

        Respectfully Submitted,

        */s/ Joseph H. Mattingly III*
        **JOSEPH H. MATTINGLY III**
        Attorney at Law
        104 W. Main Street - P.O. Box 678
        Lebanon, Kentucky 40033
        (270) 692 – 1718
        *joe@mattinglylawoffices.com*
        (Admitted *Pro Hac Vice*)

        and

        Van W. Northern
        NORTHERN LEGAL, P.C.
        3545 S. Georgia Street
        Amarillo, Texas 79109
        Telephone: (806) 374-2266
        Facsimile: (806) 374-9535
        *northernlegalpc@gmail.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed by the Clerk of the Court on this 18th day of December, 2024, by using the CM/ECF system which will serve a notice of electronic filing upon all interested parties registered. A copy thereof has also been served by electronic mail to the following:

| | |
|---|---|
| UNDERWOOD LAW FIRM, P.C. | Michael R. Johnson |
| Thomas C. Riney | Matthew M. Cannon |
| W. Heath Hendricks | RAY QUINNEY & NEBEKER P.C. |
| 500 South Taylor, Suite 1200, LB 233 | 36 South State Street, Suite 1400 |
| Amarillo, Texas 79101 | Salt Lake City, Utah 84111 |
| *tom.riney@uwlaw.com* | *mjohnson@rqn.com* |
| *heath.hendricks@uwlaw.com* | *mcannon@rqn.com* |

        By:   */s/ Joseph H. Mattingly III*
                JOSEPH H. MATTINGLY

11