UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 24055651
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

Michael R. Johnson (*Pro Hac Vice*)
Matthew M. Cannon (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email:  mjohnson@rqn.com
Email: mcannon@rqn.com

*Attorneys for Plaintiff Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS, AMARILLO DIVISION**

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC., McCLAIN FARMS, INC., and 7M CATTLE FEEDERS, INC.,<br><br>Debtors.[1] | Chapter 7<br><br>CASE NO. 23-20084-rlj<br><br>Jointly Administered |
| RABO AGRIFINANCE LLC,<br><br>*Plaintiff,*<br>v.<br><br>ACEY LIVESTOCK, LLC et al.,<br><br>*Defendants.*[2] | **ADV. PROC. NO. 23-02005-rlj**<br><br>**Honorable Robert L. Jones** |

---

[1] The Debtors in these jointly administered cases are: (1) McClain Feed Yard, Inc. (Case No. 23-20084); (2) McClain Farms, Inc. (Case No. 23-20885); and (3) 7M Cattle Feeders, Inc. (Case No. 23-20886). All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

[2] The Defendants named in the Complaint are ACEY LIVESTOCK, LLC; MICHAEL ACEY; STAN E. AYERS, JR.; ARNOLD BRAUN TRUST; ARNOLD BRAUN; ROBERT BRAUN; BAR D RANCH LAND & CATTLE LLC; N.

# RABO'S BRIEF IN RESPONSE TO ACEY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FIRST PHASE ISSUES

Plaintiff, Rabo AgriFinance LLC ("**RAF**" or "**Rabo**"), through its counsel of record, hereby files its Response brief to the Motion for Partial Summary Judgment on First Phase Issues (the "**Acey Motion**") filed by Defendants, Acey Livestock, LLC, Michael Acey, Barrett's Livestock, Inc., and Don Ralph Barrett ("**Defendants**").

---

TERRY DICKS; BARRETT'S LIVESTOCK INC.; DON RALPH BARRETT; BELLA ELEGANCE LLC; BIG SEVEN CAPITAL PARTNERS, LLC; DORA BLACKMAN; BRYAN BLACKMAN; EDDIE BRYANT; BRENT BURNETT; JOE BURNETT; TERRY BURNETT; BUSS FAMILY TRUST; EDWIN D. BUSS; DENNIS BUSS; C HEART RANCH, LLC; COLETTE LESH; CARRAWAY CATTLE, LLC; RICHARD CARRAWAY; CURTIS JONES FARMS; DAC83 LLC; ERIC DeJARNATT; DON JONES FARM, INC.; DON JONES TRUCKING, INC.; DUFURRENA CUTTING HORSES; EDWARD LEWIS DUFURRENA; RIETA MAY DUFURRENA; ROBERT ELLIS; MICHAEL EVANS; DOUG FINLEY; GARWOOD CATTLE CO.; JUSTIN GARWOOD; GENE BROOKSHIRE FAMILY, LP; JOEL BROOKSHIRE; GRAY BROTHERS CATTLE; ROBERT GRAY; RONNIE GRAY; JIMMY GREER; GUNGOLL CATTLE, LLC; BRADLEY GUNGOLL; LEAH GUNGOLL; JACE HARROLD; HINES CATTLE COMPANY, LLC; HINES FARMS, LLC; A.J. JACQUES LIIVING TRUST; CORY JESKO; DWIGHT JESKO, JOANN & KEITH BROOKS d/b/a BROOKS FARMS; LARRY KEITH; DUSTIN JOHNSON; DAVID JOHNSON; KINSEY JONES; KINGDOM TRUST; JAMES MCCUAN; KEITH HARRIS; JANICE LAWHON; JAN LESH; MORRISON CAFÉ, LLC; LESH FAMILY TRUST; GARY LESH; JARED LESH; JORDAN LESH, LLC; LFC CATTLE; CHARLES LOCKWOOD; COLE LOCKWOOD; SHERLE LOCKWOOD; NIKKI LOCKWOOD; MAP ENTERPRISES; MIKE GOURLEY;NATALIE MARTUS; JEAN NIX; OPEN A ARENA LLC; BARRY PHILLIPS; DREW PHILLIPS; PRIEST CATTLE COMPANY LTD; PRIEST VICTORY INVESTMENT LLC; CHRISTOPHER PRINCE; PRODUCERS LIVESTOCK COMMISSION; SONNY BARTHOLD; DAVID RAINEY; RAPP RANCH; MARK J. REISZ; RALPH REISZ; RIDGEFIELD CAPITAL ASSET MANAGEMENT; JIM GIORDANO; RILEY LIVESTOCK, INC.; ANGIE ROBINSON; RICK RODGERS; STEVE RYAN; JIM RININGER; SCARLET & BLACK CATTLE, LLC; COLTON LONG; SCOTT LIVESTOCK COMPANY; SHAW & SHAW FARMS PARTNERSHIP LLC; THE UNIVERSITY OF FLORIDA; ROBERT J. SPRING; STARNES CATTLE; JEFF STARNES; EDDIE STEWART; ROBERT STEWART; RACHEL STEWART; SCOTT E. STEWART; STEVE T SCOTT FARMS, INC.; JUSTIN STUEVER; PHILLIP SULLIVAN; AMY SUTTON; CRAIG SUTTON; TGF RANCH LLC; TOM FRITH; THORLAKSON DIAMOND T FEEDERS, L.P.; JOHN TIDWELL; MYKEL TIDWELL; TINDAL TRUCK SALES; JOHN TINDAL; JANET VANBUSKIRK; LYNDAL VANBUSKIRK; SUSAN VAN BUSKIRK; COLBY VANBUSKIRK; CAMERON WEDDINGTON; NANCY WEDDINGTON; WILLIAM WEDDINGTON; WILDFOREST CATTLE COMPANY LLC; WILEY ROBY RUSSELL, JR. as TRUSTEE OF THE W. ROBBIE RUSSELL LIVING TRUST; WJ PERFORMANCE HORSES, INC.; JOB WHITE; and KENT RIES, in his capacity as CHAPTER 7 TRUSTEE OF THE DEBTORS' CONSOLIDATED BANKRUPTCY ESTATE.

**TABLE OF CONTENTS**

**SUMMARY** ............................................................................................................................. 1

**LEGAL AND FACTUAL GROUNDS RELIED ON BY RABO** ........................................... 3

    **Rabo's Responses to Defendants' Facts** ................................................................... 3

    **Rabo's Statement and Objections on Lack of Admissible Evidence** ........................... 6

    **Rabo's Additional Facts Demonstrating Material Issues for Phase II** ........................ 7

**ARGUMENT** .............................................................................................................................. 8

    I.    **AS TO ANY SPECIFIC PROCEEDS THIS COURT DETERMINES ARE DEALER TRUST ASSETS, RABO IS NOT ASSERTING THAT ITS PERFECTED LIEN IS SUPERIOR TO THE TRUST RIGHTS OF A DEFENDANT THIS COURT DETERMINES HAS A "VALID" TRUST CLAIM.** ................................................................................... 9

    II.    **THE DEFENDANTS ARE NOT ENTITLED TO THE FOUR SPECIFIC RULINGS REQUESTED IN THE ACEY MOTION AND PROPOSED ORDER.** ......................................................................................... 11

        A.    **Defendants' Concession Concerning the "Status" of the Cattle Proceeds in the Trustee's Possession is Fatal to All their Requested Rulings.** ..................................................................................... 11

        B.    **Defendants Have Failed to Meet Their Rule 56 Burden of Demonstrating They Are Potentially Entitled to Their Requested Relief.** ................................................................................... 12

        C.    **Rabo and the Trustee Have Identified Disputed Material Facts on the Issues Arguably Raised in the Motion.** ................................... 12

        D.    **The Defendants' Requested Relief Fails Under Rule 56(d) and the Scheduling Order.** ............................................................................ 14

**CONCLUSION** ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 3, 4, 5, 6, 12

*Continental Illinois Nat. Bank & T. Co. v. Chicago R. I. & P.R. Co.*,
  294 U.S. 648 (1934)................................................................................................................ 10

*Fillippo v. S. Bonaccurso & Sons, Inc.*, 466 F. Supp. 1008 (E.D. Pa. 1978)................................ 10

*Frothingham v. Mellon*, 262 U.S. 447 (1923)............................................................................... 10

*In re Frosty Morn Meats, Inc.*, 7 B.R. 988 (M.D. Tenn. 1980) ..................................................... 10

*In re Milton Poules, Inc.*, 94 B.R. 648 (Bankr. C.D. Ca. 1988) .................................................... 10

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).................................................................. 4, 10

*Lindh v. Murphy*, 521 U.S. 320 (1997) ..................................................................................... 4, 10

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) .......................................... 3, 4, 5, 6, 7, 12

*Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969) ............................................................ 10

**Statutes**

7 U.S.C. §217b............................................................................................................................... 5

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................................... 12

Fed. R. Civ. P. 56(c) .................................................................................................................... 12

Fed. R. Civ. P. 56(d) .................................................................................................................... 14

L.B.R. 7056.................................................................................................................................. 14

## SUMMARY

The specific legal question that Rabo believes the Court, Trustee, and parties are hoping to resolve through Phase I of this case is as follows:

> Under the Dealer Trust Statute, does Rabo have the first position/superior right to Debtor cattle proceeds the Court concludes are "trust assets," when Rabo obtained prior to the enactment of the Statute a first position and perfected security interest in Debtor's current and future cattle proceeds and when a defendant/claimant is deemed by the Court to have a "valid" claim to these proceeds under the Dealer Trust Statute?

As acknowledged by Defendants in their motion, this legal question appears to be a matter of first impression for this or *any* court. As such, and considering the numerous core Constitutional rights that are implicated, the answer to this novel legal question merits careful consideration. Nevertheless, after having engaged in its own thorough analysis of the issue, Rabo is willing to concede—for purposes of this Motion and case only—that the answer to the question above is "no." Rabo acknowledges that a defendant whom this Court may eventually conclude has satisfied all requirements for a valid trust claim under the Dealer Trust Statute would have rights to any assets determined by the Court to constitute the corpus of the Dealer Trust, and that such claims are generally superior to Rabo's lien rights.

Consequently, in a spirit of cooperation and to further judicial economy for all involved, Rabo would not oppose a ruling from the Court specifically providing as follows:

> With respect to the specific cattle proceeds held by the Trustee that this Court may eventually conclude by final order constitute "trust assets" under the Dealer Trust Statute, Rabo's rights to these assets under its first position and perfected security interest in Debtors' cattle proceeds are secondary to the rights held by a defendant whom this Court may eventually conclude by final order has a "valid" claim to these proceeds under the Dealer Trust Statute.

Even though Rabo is willing to make the foregoing concession, the Acey Motion <u>cannot</u> be granted as specifically requested by Defendants. Defendants' Proposed Order asks the Court to

1

enter rulings that: "(1) the Motion is Granted; (2) The claimed security interest of RAF in livestock sales proceeds does not extend or attach to the cattle sales proceeds in the custody and control of the Trustee; (3) The livestock sales proceeds currently in the custody and control of the Trustee are subject to the Dealer Trust Statute; [and] (4) The livestock sales proceeds in the custody and control of the Trustee are not assets of the bankruptcy estate of any of the subject debtors." (Acey Motion at Proposed Order.) Despite this requested Order language, on January 20, 2025, Defendants filed a brief with this Court *conceding* that the issue of whether the livestock sales proceeds in the custody of the Trustee are subject to the Dealer Trust Statute (number "3" above) are outside the scope of their Motion and will require future analysis and consideration by the Court. Defendants' concession also operates to preclude this Court from entering any of the other requested rulings because those proposed rulings hinge on and otherwise incorporate the Court's confirmation of item 3—something Defendants acknowledge the Court cannot do at this time.

The Defendants' requested relief is also improper for numerous reasons irrespective of Defendants' concession. First, Defendants have failed to meet their Rule 56 burden of presenting the Court with admissible evidence demonstrating they are entitled to their specifically requested relief. The "facts" presented by Defendants are devoid of specific citations to record evidence, and Defendants do not provide the Court with a single exhibit in alleged support of their Motion. Second, Rabo and the Trustee have presented the Court with facts and objections that would preclude Defendants' requested relief even if Defendants had submitted admissible evidence supporting their Motion. Third, pursuant to Rule 56(d), Defendants' requested relief is premature, and Rabo and the other parties are entitled to continue with discovery on these issues pursuant to

2

the controlling scheduling order, which order provides for several more months of discovery and a summary judgment deadline of August 15, 2025.

In short, Rabo believes the only substantive issue properly before the Court is the specific legal question concerning priority among and between Rabo and a "valid" trust claimant with respect to any assets that constitute the corpus of a Dealer Trust, as clarified herein. Any additional relief sought by Defendants through the Motion—including their four specifically requested rulings in their Proposed Order—is improper and should be denied.

## **LEGAL AND FACTUAL GROUNDS RELIED ON BY RABO**

### **Rabo's Responses to Defendants' Facts**

1.   In May, 2018, RAF began a lending relationship with McClain Feed Yard, Inc., and its principal, Brian Keith McClain ("McClain").

RABO RESPONSE:  **Unsupported** but **Undisputed** for purposes of this Motion. *See* Fed. R. Civ. P. 56 (c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (stating that "[i]f the moving party fails to meet [its] initial [Rule 56] burden, the motion must be denied, regardless of the nonmovant's response").

2.   Over the following several years, RAF expanded that lending relationship to include McClain Farms, Inc., and 7M Cattle Feeders, Inc.

RABO RESPONSE:  **Unsupported** but **Undisputed** for purposes of this Motion. *See* Fed. R. Civ. P. 56 (c)(1); *Celotex Corp.,* 477 U.S. at 323; *Little*, 37 F.3d at 1075.

3

    3.    To secure the various loans executed by RAF to McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., and prior to December 27, 2020, RAF obtained a security interest and lien against virtually all of the assets of McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., including cattle and cattle proceeds.

    RABO RESPONSE:  **Unsupported** but **Undisputed** for purposes of this Motion. *See* Fed. R. Civ. P. 56 (c)(1); *Celotex Corp.,* 477 U.S. at 323; *Little*, 37 F.3d at 1075.

    4.    *Effective December 27, 2020, Congress passed the Dealer Trust Statute.*

    RABO RESPONSE:  **Unsupported** but **Undisputed** for purposes of this Motion. *See* Fed. R. Civ. P. 56 (c)(1); *Celotex Corp.,* 477 U.S. at 323; *Little*, 37 F.3d at 1075.

    5.    *RAF's loans and security interests in cattle and cattle proceeds predate the effective date of the Dealer Trust Statute.*

    RABO RESPONSE:  **Unsupported** but **Undisputed** for purposes of this Motion. *See* Fed. R. Civ. P. 56 (c)(1); *Celotex Corp.,* 477 U.S. at 323; *Little*, 37 F.3d at 1075. This fact arguably undermines Defendants' Motion because liens that attached to specific cattle or cattle proceeds *prior* to the enactment of the Dealer Trust Statute would likely remain in first position and would not be stripped or superseded by a subsequent dealer trust claim on those specific cattle or cattle proceeds. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994) (providing a framework to answer the question of when a federal statute/amendment should be applied retrospectively as opposed to prospectively and stating that if the amendment will "impair rights a party possessed when he/she acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," then the statute has a "retroactive effect" and should only apply prospectively); *see also Lindh v. Murphy*, 521 U.S. 320 (1997) (same). In other words, if the specific cattle proceeds currently held by the Trustee were proceeds that existed prior to December 27, 2020, Rabo would likely have first priority rights in those proceeds by virtue of its lien. *See Landgraf*, 511 U.S. at 266.

4

It seems likely that Fact No. 5 is intended to convey the point that Rabo's security interests and liens against Debtors' current *and future* cattle/cattle proceeds were obtained prior to December 27, 2020. In any event, Rabo is not aware of facts suggesting that any of the proceeds currently held by the Trustee are proceeds from the sale of cattle that were in existence and owned by Debtors prior to December 27, 2020—the effective date of the Dealer Trust Statute, and Rabo is making no such argument here.

6. *In April, 2023, various parties, including Acey and Barrett, began filing claims with the USDA under the Dealer Trust Statute, contending that certain cattle proceeds were subject to the Dealer Trust Statute and imposed with a statutory trust for the benefit of unpaid cash sellers of livestock.*

RABO RESPONSE: **Unsupported** but **Undisputed** for purposes of this Motion. *See* Fed. R. Civ. P. 56 (c)(1); *Celotex Corp.,* 477 U.S. at 323; *Little,* 37 F.3d at 1075.

7. *After a rigorous review and analysis of the claims filed under the Dealer Trust Statute, the USDA made the following determinations:*

   A. *That McClain and McClain Farms, Inc., were subject to the Packers and Stockyards Act as livestock dealers (7 U.S.C. §217b) in commerce, through the purchase of livestock and resale of livestock to feedyard and rodeo production customers during the period of March and April, 2023;*

RABO RESPONSE: **Unsupported** and **Disputed** for purposes of this Motion. *See* Fed. R. Civ. P. 56 (c)(1); *Celotex Corp.,* 477 U.S. at 323; *Little,* 37 F.3d at 1075. Furthermore, even if this fact were supported, Defendants do not provide evidence or provide argument demonstrating that McClain and McClain Farms, Inc. were the purchasers of the cattle in question, nor do Defendants address the respective roles of the other debtors, McClain Feed Yard, Inc. and 7M Cattle Feeders, Inc.

5

> B. Only seven unpaid seller trust claims filed with the USDA, including the claims of Acey and Barrett, and a few others were "Apparently Valid Claims";

RABO RESPONSE: **Unsupported** and **Disputed** for purposes of this Motion. *See* Fed. R. Civ. P. 56 (c)(1); *Celotex Corp.*, 477 U.S. at 323; *Little*, 37 F.3d at 1075. The USDA Report identifies 12 potentially valid claims, submitted by seven different parties. (USDA Report at 6-7.) While Rabo does not dispute that the Report provides that the three claims from Acey and one claim from Barrett were "apparently valid," the Court, Trustee, parties to this case, and USDA all recognize that it is this Court's responsibility to determine whether any of the submitted claims are "valid" under the Dealer Trust Statute, which issue and potential determination is the primary purposes of Phase II in this case. (*See* Scheduling Order.)

> C. As of June 9, 2023, a total of $2,475,756.21 in trust assets was collected from the liquidation of livestock inventory in Kentucky and Texas on April 24, 2023, and April 25, 2023, at Blue Grass Stockyards, LLC and Lone Star Stockyards, LLC. As of October 12, 2023, additional assets were disclosed from the sale of cattle inventory in May, 2023, totaling $91,507.10 and cash assets in July, 2023, totaling $80,010.70. Trust assets of as October 2023, totaled $2,645,850.14.

RABO RESPONSE: **Unsupported** and **Disputed.** *See* Fed. R. Civ. P. 56 (c)(1); *Celotex Corp.*, 477 U.S. at 323; *Little*, 37 F.3d at 1075. The preliminary identification 15 months ago of potential trust assets by the USDA is unsupported, disputed, and now admittedly immaterial given Defendants' concession that their Motion is not seeking a determination of what funds currently held by the Trustee are subject to the Dealer Trust Statute. (Acey Reply at 1-2 ("Acey and Barrett agree that this issue is outside the scope of the pending Motion for Partial Summary Judgment on First Phase Issues.").)

### Rabo's Statement and Objections on Lack of Admissible Evidence

The primary if not sole issue substantively addressed in the Acey Motion is the specific legal question of whether Rabo's secured liens in any of Debtors' cattle and cattle proceeds that

6

may be held by the Trustee are superior to the rights in those proceeds held by a defendant eventually found to have a valid claim to those proceeds under the Dealer Trust Statute. (*See generally* Acey Motion.) As to this specific legal question on priority as identified and clarified by Rabo herein, Rabo acknowledges that this issue is properly before the Court. However, Rabo objects to the specific relief requested by Defendants in their Motion, which relief extends beyond this specific legal question on priority and which relief is factually and legally unsupported by the Motion. (*See generally* Motion and Proposed Order.)

### Rabo's Additional Facts Demonstrating Material Issues for Phase II

Because Defendants failed to provide factual evidence that would support their requested relief, the Acey Motion fails regardless of Rabo's response. *See, e.g., Little,* 37 F.3d at 1075. Nevertheless, Rabo provides herewith just a few facts demonstrating some of the disputed material issues that will be addressed in Phase II of this case and that preclude granting Defendants' Motion.

1. The *Alternative Scheduling Order* dated July 2, 2024 (the "**Scheduling Order**") generally divides the case into three "Phases" and provides that the "first phase shall address the applicability, if any, of the Dealer Trust Statute to the Estate Funds and to the Debtors' bankruptcy cases generally give the terms and date(s) of the [Rabo] loan documents and advancements and the applicability and validity, if any, of RAF's security interest in Debtor's Estate Funds (the "First Phase Issues")." (Alternative Scheduling Order (Dkt. No. 178) at App. 2, a copy of which is attached hereto as Rabo App. 1-5.)

2. The Scheduling Order provides that the "second phase shall address the validity of the asserted Claims under the Dealer Trust Statute if the Dealer Trust Statute is determined to apply (the 'Second Phase Issues')" and contains a discovery deadline of March 28, 2025, and a summary judgment or other dispositive motion deadline of August 15, 2025. (*Id.* at App. 2-3.)

7

3. On January 8, 2025, the Trustee filed *Trustee's Response to Motion for Partial Summary Judgment by Defendants, Acey Livestock, LLC; Michael Acey; Barrett's Livestock, Inc.; and Don Ralph Barrett, On First Phase Issues* (the "**Trustee Response**"), wherein the Trustee argued, among other things, that the "Trustee disputes that, and believes it is outside of the scope of this Motion, which particular funds may constitute proceeds from livestock purchased by a dealer in cash sales." (Trustee Response (Dkt. No. 220) at App. 7, a copy of which is attached hereto as App. 6-9.)

4. On January 20, 2025, Defendants filed their *Reply to Trustee's Response to Motion for Partial Summary Judgment on First Phase Issues* (the "**Acey Reply**"), wherein Defendants respond to the Trustee's objections by stating, in part, that "Acey and Barrett agree that before distribution of assets by the Trustee to eligible Dealer Trust beneficiaries can be ordered, a later determination is required to identify which assets held by the Trustee are subject to the Dealer Trust Statute." (Acey Reply (Dkt. No. 222), a copy of which is attached hereto as App. 10-14.)

5. In Rabo's briefing on its *Motion for Partial Summary Judgment* ("**Rabo's SJ Motion**"), Rabo provides the facts and arguments demonstrating that the total amount of "valid" trust claims in this case may be *less* than the total amount of cattle proceeds the Court concludes are "dealer trust assets." (*See* Rabo's SJ Motion (Dkt. Nos. 190-91).)

6. Rabo is in the process of finalizing written discovery requests to Defendants seeking facts, documents, admissions, and other materials that are relevant to the Phase II issues.

## ARGUMENT

The majority of the Acey Motion is devoted to the legal question of the general priority of rights in the specific cattle proceeds this Court may eventually conclude are indisputably "trust

8

assets" under the Dealer Trust Statute. (*See generally* Acey Motion.) Although Defendants have presented this issue and requested relief in a way that would likely preclude summary judgment, Rabo acknowledges that when properly framed, the Court could declare the general priority of rights at issue. However, the four specifically requested rulings in the Proposed Order to the Acey Motion are not properly before the Court and should be denied for numerous reasons.

I. **AS TO ANY SPECIFIC PROCEEDS THIS COURT DETERMINES ARE DEALER TRUST ASSETS, RABO IS NOT ASSERTING THAT ITS PERFECTED LIEN IS SUPERIOR TO THE TRUST RIGHTS OF A DEFENDANT THIS COURT DETERMINES HAS A "VALID" TRUST CLAIM.**

The Scheduling Order provides that the first phase of this case "shall address the applicability, if any, of the Dealer Trust Statute to the Estate Funds and to the Debtors' bankruptcy cases generally ***given*** the terms and date(s) of the [Rabo] loan documents and advancements and the applicability and validity, if any, of RAF's security interest in Debtor's Estate Funds." (App. 2 (emphasis added).) Accordingly, the primary and specific legal question that Rabo believes the Court, Trustee, and parties are hoping to resolve through Phase I of this case is whether Rabo's first position and perfected security interest in Debtors' cattle proceeds create a superior right in any cattle proceeds deemed to be to trust assets in which a defendant has demonstrated a valid trust claim under the Dealer Trust Statute.

The Defendants directly address this issue in their Motion. (*See generally* Acey Motion.) After acknowledging that "no jurisprudence has thus far been developed to interpret" the recent creation of the "trust" in the Dealer Trust Statute, Defendants point to the "judicial interpretation of substantially identical sister provisions of the Act" as powerful and persuasive authority. (Acey Motion at 5.) The cases primarily relied on by Defendants are *In re Frosty Morn Meats, Inc.*, 7

9

B.R. 988 (M.D. Tenn. 1980), *Fillippo v. S. Bonaccurso & Sons, Inc.*, 466 F. Supp. 1008 (E.D. Pa. 1978), and *In re Milton Poules, Inc.*, 94 B.R. 648 (Bankr. C.D. Ca. 1988). (*Id.* at 5-10.)

As a matter of first impression and given the cases on the Contracts Clause, Takings Clause, Ex Post Facto Clause, Due Process Clause, perfected security interests, and statutory interpretation, there is certainly a good faith basis for Rabo to ask this Court to conclude that its lien rights are "superior" here. *See Lindh*, 521 U.S. 320; *Landgraf*, 511 U.S. at 280; *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969); *Continental Illinois Nat. Bank & T. Co. v. Chicago R. I. & P.R. Co.*, 294 U.S. 648 (1934); *Frothingham v. Mellon*, 262 U.S. 447 (1923). However, having read and analyzed the cited cases, as well as numerous other potentially relevant cases and statutes, Rabo believes that the Defendants have presented the Court with the generally correct legal framework for analyzing this specific question of priority. Accordingly, in a spirit of cooperation and for purposes of judicial economy, Rabo would not oppose a ruling from the Court specifically providing as follows:

> With respect to the specific cattle proceeds held by the Trustee that this Court may eventually conclude are "trust assets" under the Dealer Trust Statute, Rabo's rights to these assets under its first position and perfected security interest in Debtors' cattle proceeds are secondary to the rights held by a defendant whom this Court may eventually conclude has a "valid" claim to these proceeds under the Dealer Trust Statute.

Such a ruling would be consistent with the Trustee's recently stated position that "qualified Dealer Trust claimants have a superior right to all livestock purchased by a dealer in cash sales and all inventories of, or receivables or proceeds from, such livestock, than the alleged liens of Rabo AgriFinance LLC." (Trustee's Response at 2) (cleaned up).

II. **THE DEFENDANTS ARE NOT ENTITLED TO THE FOUR SPECIFIC RULINGS REQUESTED IN THE ACEY MOTION AND PROPOSED ORDER.**

The four rulings requested by Defendants in their Motion and Proposed Order are as follows:

1. The Motion is GRANTED.
2. The claimed security interest of RAF in livestock sales proceeds does not extend or attach to the cattle sales proceeds in the custody and control of the Trustee;
3. The livestock sales proceeds currently in the custody and control of the Trustee are subject to the Dealer Trust Statute;
4. The livestock sales proceeds in the custody and control of the Trustee are not assets of the bankruptcy estate of any of the subject debtors.

(Acey Motion at Proposed Order.) This requested relief is unsupported, unavailable, legally improper, and premature.

A. **Defendants' Concession Concerning the "Status" of the Cattle Proceeds in the Trustee's Possession is Fatal to All their Requested Rulings.**

In the Acey Reply, Defendants expressly concede that the question of what assets are subject to the Dealer Trust Statute is outside the scope of the Acey Motion and that "a later determination is required to identify which assets held by the Trustee are subject to the Dealer Trust Statute." (Acey Reply.) This concession obviously obviates Defendants' third request from the Court's consideration. (*See* Proposed Order at Request 3 ("The livestock sales proceeds currently in the custody and control of the Trustee are subject to the Dealer Trust Statute.").) However, it is not only Request 3 that should be removed from consideration. Both Requests 2 and 4 incorporate and otherwise are dependent on the status of the proceeds as "trust assets." Consequently, Defendants' concession undermines all their specifically requested relief.

11

### B. Defendants Have Failed to Meet Their Rule 56 Burden of Demonstrating They Are Potentially Entitled to Their Requested Relief.

Pursuant to Rule 56, summary judgment should be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying the materials in the record demonstrating the absence of a genuine issue of material fact. *Id.* at 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Defendants have fallen woefully short of meeting their initial burden because they fail to point to specific record evidence or otherwise attach as exhibits evidence supporting their Motion. (*See generally* Acey Motion.)

For example, as part of the Court's analysis concerning what specific "livestock sales proceeds" may be subject to the Dealer Trust Statute—an analysis Defendants concede cannot be done at this time—the Court will need to analyze and determine the source of these funds as they related to "any of the subject debtors." (*See* Proposed Order at Request 4.) Such an analysis necessarily involves factual and legal questions that Defendants do not even attempt to address in their Motion. (*See generally* Acey Motion.)

The absence of admissible evidence supporting their requested relief is fatal to Defendants' Motion. *See Little*, 37 F.3d at 1075 (providing that "[i]f the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response").

### C. Rabo and the Trustee Have Identified Disputed Material Facts on the Issues Arguably Raised in the Motion.

Even if Defendants had met their initial Rule 56 burden—which they did not—Rabo (and the Trustee) have presented the Court with facts and arguments demonstrating the material disputed issues related to these requests. (*See* Rabo's Facts, *supra*; Trustee's Response.) With

12

respect to the question of whether the livestock sale proceeds in the possession of the Trustee are assets of the bankruptcy Estate, that is an issue that cannot and should not be decided until at least Phase II for numerous reasons. (*See* Scheduling Order.) First, Defendants concede that the question of what the specific livestock proceeds are even subject to the Dealer Trust Statute is an issue for Phase II. Second, even if some cattle proceeds are eventually determined to be subject to the Dealer Trust Statute, such proceeds could also end up being property of the Debtors' estate if the Court eventually determines that the total amount of all "valid" dealer trust claims is less than the total amount of "trust" assets. (*See* Rabo SJ Motion.) Third, there is simply insufficient factual and legal support in the Acey Motion to justify this Court's consideration of this specific issue now. Fourth, there is no "practical" reason to engage in this analysis now given the Trustee's clear representations and actions demonstrating his intent to carefully hold and retain these proceeds until the full resolution of this Adversary Proceeding.

There are also some additional reasons to deny Defendants' request that the Court rule "the claimed security interest of RAF in livestock sales proceeds does not extend or attach to the cattle sales proceeds in the custody and control of the Trustee." (Proposed Order at Request No. 2.) Defendants' own caselaw dictates denial of this request as drafted, as these cases provide that a lender's security interest and lien on a borrower's cattle and cattle proceeds (such as Rabo's interests here) immediately attach to the cattle/cattle proceeds when acquired by the borrower.[3] *See Fillippo,* 466 F. Supp. at n.2. Accordingly, Defendants' requested ruling that "the claimed

---

[3] As explained herein, the relevant and controlling legal question is whether at the same time a secured party's lien rights attach to cattle acquired by the borrower, these cattle (and any subsequent proceeds) are impressed with a superseding statutory trust for the seller's benefit under the Dealer Trust Statute. (*See supra* at Argument I.)

13

security interest of RAF in livestock sales proceeds does not extend or attach to the cattle sales proceeds in the custody and control of the Trustee," is legally incorrect.

### D. The Defendants' Requested Relief Fails Under Rule 56(d) and the Scheduling Order.

As a fourth and independent basis for denying Defendants' relief specifically requested in the Acey Motion, Rabo, the Trustee, and the other parties are entitled to discover additional facts relevant to these issues, as expressly contemplated under the Scheduling Order. *See* Fed. R. Civ. P. 56(d). Pursuant to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d); *see also* L.B.R. 7056 (stating that Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings). Here, Rabo has submitted a declaration from its counsel demonstrating that Rabo is in the process of obtaining facts and information from Defendants that are central to the question of the validity or invalidity (or partial validity) of their dealer trust claims. (*See* Rabo Fact No. 6.) There are additional facts that the Court and parties will need to obtain and address to make a final decision on what proceeds are "trust assets" and the potential validity of any Dealer Trust Claim. (*See generally id.*)

## CONCLUSION

For the reasons stated herein, and as to the specific proceeds this Court determines are Dealer Trust Funds, Rabo is not asserting that its lien rights are generally superior to the trust rights of any defendant this Court determines has a "valid" trust claim to those proceeds. Accordingly, Rabo would not object to that specific ruling by the Court. The Acey Motion, however, does not

14

support the four specifically requested rulings or any other finding, order, ruling, or judgment from the Court for the reasons stated herein, in the Trustee's Brief, and the other briefing and oral argument on this matter.

Consequently, if the Court is inclined to "grant" any portion of the Acey Motion, Rabo believes that the only appropriate ruling would be as follows:

> With respect to the specific cattle proceeds that this Court may determine are "Dealer Trust Funds," Rabo's rights in these cattle proceeds by virtue of its perfected and first-priority security lien are secondary to the rights held by a defendant whom this Court may eventually conclude has a "valid" claim to these proceeds under the Dealer Trust Statute.

DATED this 22nd day of January 2025.

UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 24055651
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

Michael R. Johnson (*Pro Hac Vice*)
Matthew M. Cannon (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email: mjohnson@rqn.com
Email:  mcannon@rqn.com


/s/Matthew M. Cannon
Michael R. Johnson
Matthew M. Cannon

*Attorneys for Rabo AgriFinance LLC*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of January 2025, I electronically filed **RABO'S BRIEF IN RESPONSE TO ACEY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON FIRST PHASE ISSUES** with the United States Bankruptcy Court for the Northern District of Texas via the Court's CM/ECF system, which sent notice to all registered ECF counsel of record users in this case.

*/s/ Liz Beidoun*
